# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3904

_____

United States of America,      *
     *

         Appellee,      *
     *    Appeal from the United States

v.      *    District Court for the
     *    Eastern District of Arkansas.

Frederick Freeman Craiglow,      *
     *

         Appellant.      *

_____

Submitted: October 11, 2005
Filed:  December 23, 2005 **(Corrected 3/14/07)**

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Frederick Freeman Craiglow pled guilty to mail fraud in violation of 18 U.S.C. § 1341. The district court[1] calculated the amount of loss to be over $1 million and imposed a Guidelines sentence of 41 months' imprisonment. In consideration of *Blakely v. Washington*, 542 U.S. 296 (2004), the court announced alternative sentences: 41 months, in the event the United States Sentencing Guidelines were found to be unconstitutional in their entirety; and, 24 months, based only on Craiglow's admissions, in the event that the Guidelines were found only partially

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

unconstitutional. Craiglow appeals, arguing that the district court imposed a sentence contrary to the principles set forth in *United States v. Booker*,___U.S.___, 125 S. Ct. 738 (2005) and erred in determining the amount of loss. For the reasons discussed below, we affirm.

## I. *Background*

Craiglow pled guilty to mail fraud for a scheme in which he solicited individuals to purchase automated teller machines ("ATMs") as investments. Craiglow misused investors' funds and provided them with fraudulent accounting information. He collected over $1.7 million from approximately 25 investors in the ATM scheme. Collectively, Craiglow paid those 25 investors less than $350,000 in "returns."

Craiglow's plea agreement stipulated that: (1) the base offense level would be six as determined by U.S.S.G. § 2B1.1(a); (2) Craiglow would receive a two-level increase because there were more than 10, but fewer than 50, victims of his fraud; and (3) Craiglow would receive a three-level reduction for acceptance of responsibility. However, Craiglow and the government disagreed as to the amount of loss and restitution. Craiglow argued that the district court should give him credit for his business expenses. If given such credit, he contended that the amount of loss was actually less than $200,000. The government's position, however, was that the amount of loss exceeded $1 million. The parties submitted the amount of loss and restitution issues to the district court at a subsequent sentencing hearing.

At the plea proceeding, the government asserted that Craiglow received more than $1.6 million from the investors over two and one-half years. At the end of the government's statement, Craiglow acknowledged that the statement was accurate. The United States Probation Office prepared a presentence report ("PSR"), which found a total net loss to investors of $1,525,544.40. The PSR calculated a total offense level of 21 and a criminal history category of I, giving Craiglow a sentencing range of 37 to 46 months.

After Craiglow's plea, but before his sentencing, the United States Supreme Court decided *Blakely*. Not surprisingly, Craiglow argued in a pre-sentence pleading that *Blakely* prohibited the district court from making a finding of fact regarding the amount of loss. Thus, Craiglow argued that his base offense level of six could only be raised by the two-level increase to which he stipulated regarding the number of victims. In addition, he contended that the district court should give him credit against the amount of loss for "business expenses" he incurred during the fraud scheme.

Anticipating the Court's application of *Blakely* to the Guidelines, the district court announced that it would impose alternative sentences. Neither party objected. The district court then heard testimony from numerous witnesses, including Craiglow. Special Agent Michael Lowe of the Federal Bureau of Investigation (FBI) testified that Craiglow's scam operated as a Ponzi[2] scheme. Craiglow paid investors with money from newer investors, not from business profits. Janet Finkenbinder, a financial analyst with the FBI, calculated the loss amount as approximately $1.5 million.[3] She testified that she found evidence of only about $100,000 to $110,000 in business-related expenses for the entire period of the scheme. Craiglow testified, however, that the amount of loss was only $194,758 because he "deserved an income to feed [his] family." Craiglow admitted that his expense figures were estimates and lacked substantiation.

At the conclusion of the hearing, the district court refused to award Craiglow credit for his alleged business expenses, finding that Craiglow's calculations were "fraught with inaccuracies." The court entered an order of restitution for

---

[2]A Ponzi scheme establishes a fraudulent corporation that operates and continues to operate at a loss. *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1088 n.3 (2d Cir. 1995).

[3]Finkbinder calculated the loss by taking the total amount of monies invested by the investor and subtracting the money Craiglow paid to that investor. According to Ms. Finkenbinder, the total amount invested was $1,777,268.93.

$1,398,322.71. In addition, the district court sentenced Craiglow to a term of 41 months' imprisonment under the Guidelines. The district court then proceeded to impose two alternative sentences. The first alternative sentence would take effect if the Court declared the United States Sentencing Guidelines unconstitutional in their entirety. In that event, the court's sentence would be 41 months' imprisonment. However, if the Court declared the Guidelines only partially unconstitutional, and severed the constitutional provisions from the unconstitutional provisions, Craiglow would be sentenced to 24 months' imprisonment, based on his admissions. This appeal ensued from the district court's judgment and commitment order and supplemental order setting forth the two alternative sentences.

## II. *Discussion*
### A. *Reasonable Sentence*

Craiglow's first argument on appeal is that the district court's pre-*Booker* sentence was unreasonable. Craiglow objected to the use of mandatory Guidelines and thus preserved his constitutional challenge to their use in his sentencing. *United States v. Londondio*, 420 F.3d 777, 791 (8th Cir. 2005). We therefore review Craiglow's sentence under the harmless error standard. Under this standard, the government bears the burden of proving that any error in the use of mandatory guidelines was harmless. *United States v. Mendoza-Mesa*, 421 F.3d 671, 672 (8th Cir. 2005). Rule 52(a) of the Federal Rules of Criminal Procedure provides that harmless error is "any error which does not affect substantial rights." *Id.* (citations omitted). If the error is of a constitutional magnitude, the government must prove harmless error beyond a reasonable doubt. *Id.* (finding that the government had to prove harmless error beyond a reasonable doubt because the district court sentenced the defendant under a mandatory Guidelines regime on the basis of a fact-based sentencing enhancement that was not tried to a jury). If the error is not of such a magnitude, then the government must only establish that there is no "'grave doubt' as to whether the error substantially influenced the outcome of the proceedings." *Id.* at 673. In deciding whether the error was harmless, we "look to whether the district court's application of

the guidelines as mandatory, and not advisory, substantially influenced the outcome of the case." *United States v. Marcussen*, 403 F.3d 982, 984 (8th Cir. 2005).

We have held that no grave doubt exists as to whether a defendant would have received a more favorable sentence absent *Booker* error where the district court states at sentencing that it would impose the same alterative sentence if the Guidelines were deemed invalid. Grave doubt does not exist even if the district court's alternative sentence assumes the Guidelines to be wholly unconstitutional and not advisory. *Londondio*, 420 F.3d at 791; *see also United States v. Henderson*, 416 F.3d 686, 695 (8th Cir. 2005) (stating that the most significant indicator that the district court's sentencing error was harmless was the district court's statement that it was using the Guidelines only as a guide if they were found to be unconstitutional); *United States v. Archuleta*, 412 F.3d 1003, 1006 (8th Cir. 2005) (finding harmless error where the district court refused to find the Guidelines unconstitutional but gave the defendant an alternative sentence); *United States v. Shannon*, 414 F.3d 921, 923 (8th Cir. 2005) (affirming the judgment of the district court where the district court clarified that it would have imposed the same sentence even without regard to the Sentencing Guidelines); *United States v. Marcussen*, 403 F.3d 982, 985 (8th Cir. 2005) (affirming the judgment of the district court even though the district court's alternative sentence presumed that the court had total discretion rather than an obligation to treat the Guidelines as advisory).

The district court stated in its order that "[t]he Court has fully considered the evidence presented, statements of counsel and defendant, reviewed the Presentence Investigation Report, and using the Guidelines as advisory, finds that the above sentence [of 41 months] imposed is appropriate for this defendant." Nothing in the record causes us grave doubt as to whether Craiglow would have received a more favorable sentence if re-sentenced post-*Booker*. Just as in *Londondio*, the district court stated at sentencing that it would impose the same alternative sentence if the Court

declared the Guidelines unconstitutional. Any error in Craiglow's sentencing is thus harmless.

We also find that the district court's alternative sentence of 41 months was reasonable. The district court stated that it was sentencing Craiglow "in the mid range of the Guidelines to a sentence of 41 months." "While we have not yet held that a sentence within a correctly calculated Guideline range is reasonable per se, [Craiglow] has put forth no reason to establish that he should have been sentenced outside of that range." *Archuleta*, 412 F.3d at 1007. Because the district court fully considered all the evidence and engaged in a thorough analysis, we hold that a 41-month sentence for mail fraud stemming from a scheme to defraud 25 investors was reasonable.

Additionally, while Craiglow argues that *Booker* is applicable to the imposition of restitution because restitution is an increase in punishment, this question is no longer an issue for our court. In *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005), we held that "neither *Apprendi* nor *Blakely* prohibit judicial fact finding for restitution orders."

B. *Amount of loss*

Craiglow's final argument on appeal is that the district court erred in determining the amount of loss because it did not consider the fair market value of the services he rendered to investors nor deduct his legitimate business expenses. Craiglow argues he was entitled to credit against loss for any restitution or monies returned to the investors in the offense; the value of the property he actually purchased; and the cost of the services rendered in the business venture, including the costs of the ATM's and the costs of services to maintain those machines. We review the district court's interpretation of the term "loss," as used in the Guidelines, de novo, while we review its calculation of loss for clear error. *See United States v. Swanson*, 394 F.3d 520, 527 (7th Cir. 2005). "Although the burden is on the government to prove loss, a defendant's wholly unsubstantiated statements are not enough to counter

or even question the court's acceptance of proof of loss." *Id.* The district court's method for calculating the amount of loss must be reasonable, but the loss "need not be determined with precision." *United States v. Whatley*, 133 F.3d 601, 606 (8th Cir. 1998).

Craiglow cites U.S.S.G. § 2B.1.1, commentary 3(E)(i) for support but we find it unavailing. We have previously rejected the argument that one who commits a fraud is entitled to his business expenses "in perpetrating a fraud." *Id.* (affirming the district court's rejection of the defendants' argument that the district court should reduce the amount of loss by allowances for a reasonable profit and overhead expenses). When a defendant is involved in a "fraudulent investment scheme, such as a Ponzi scheme," the court shall not reduce the loss "by the money or the value of the property transferred to any individual investor in the scheme in excess of that investor's principal investment (i.e., the gain to an individual investor in the scheme shall not be used to offset the loss to another individual investor in the scheme)." Application Note 3(F)(iv) to U.S.S.G. § 2B1.1.

Here, the district court found that Craiglow was involved in a scheme to defraud investors in which he used later investors' money to pay early investors. He is not entitled to deduct any business expenses. The record contains no evidence any victim received fair market value of any legitimate business service. We affirm the district court in all respects.

_____