# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2761

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Daniel P. Alfonso, | * | |
| | * | |
| Appellant, | * | |

_____

Submitted: December 15, 2006
Filed: March 9, 2007

_____

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Daniel Alfonso pled guilty to one count of wire fraud, a violation of 18 U.S.C. § 1343. The district court[1] sentenced him to twenty-four months' imprisonment. The sentence was based in part on the district court's calculation of the monetary losses suffered by the victims of Alfonso's fraudulent scheme. Alfonso appeals from his sentence, contending that the district court used the wrong method to calculate these losses. We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

**I.**

Alfonso operated a Ponzi scheme, through which he obtained funds from investors by fraudulently claiming that he would invest their money in promising real estate ventures. He made no such investments, however, and used the money instead for his own personal use. Alfonso also used the money to perpetuate the scheme by providing some individuals with a profit on their investments in order to encourage further investment. Some of his victims made two different investments with Alfonso. These individuals profited from their initial investment, but lost money on their subsequent investment.

The presence investigation report (PSR), applying U.S.S.G. § 2F1.1 (1998),[2] determined that Alfonso's total offense level was 15. This assessment was partly based on the PSR's determination that the total loss to Alfonso's victims was $385,125. See § 2F1.1(b)(1)(J) (applying a 9-level increase if the loss is more than $350,000). In calculating this total loss, the PSR evidently concluded that profits from a victim's earlier investments could not be used to offset losses on that same victim's subsequent investments (or, for that matter, losses on another victim's investment).[3] Alfonso objected to this method, arguing that a victim's profits on one investment should be used to reduce the victim's losses on other investments for purposes of

---

[2]To determine Alfonso's offense level, the PSR utilized Guidelines amendments that were in effect at the time of Alfonso's offense conduct.

[3]An example illustrates this approach: investor Kevin Kincaid's first investment of $36,000 yielded a profit of $8,000. Accordingly, this investment did not add anything to the amount of loss suffered by investors because it did not result in any losses. On his second investment, however, Kincaid invested $265,000, but received only $110,000 of that money back. The $155,000 loss on this second investment was added to the total investor loss. If, as Alfonso suggested, gains from Kincaid's first investment were applied to offset his losses on the second investment, $147,000 would be added to the total loss calculation (that is, a $155,000 loss on the second investment minus the $8,000 gain on the first investment).

determining total investor loss. He contends that if this method were applied and other errors in the loss calculation were corrected, the total loss from his scheme would be less than $350,000 and would result in a Guidelines range of 15 to 21 months' imprisonment. The district court, however, adopted the PSR's calculation of total victim loss and sentenced Alfonso at the high end of the resulting Guidelines range of 18 to 24 months.

## II.

"We review a district court's interpretation and application of the sentencing guidelines *de novo* and its findings of fact for clear error." United States v. Durham, 470 F.3d 727, 734 (8th Cir. 2006) (citing United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005)). In defining "loss," the district court relied upon Application Note 3(F)(iv) to U.S.S.G. § 2B1.1 (2005). Although this application note was added after Alfonso's offense conduct, the parties agree that it was properly relied upon because it simply clarified the meaning of the term "loss."

Application Note 3(F)(iv) states:

> In a case involving a fraudulent investment scheme, such as a Ponzi scheme, loss shall not be reduced by the money or the value of the property transferred to any individual investor in the scheme in excess of that investor's principal investment (*i.e.*, the gain to an individual investor in the scheme shall not be used to offset the loss to another individual investor in the scheme).

U.S.S.G. § 2B1.1, cmt. n.3(F)(iv) (2005). Although the parties agree that this note prohibits gains to one investor from being used to offset losses to another investor, it does not explicitly address whether gains from an individual's earlier investments should be used to offset losses from that same person's later investments. The rationale underlying the application note, however, is instructive: "[T]he gain to any

-3-

individual investor in the scheme [should not be] used to offset the loss to other individual investors because any gain realized by an individual investor is designed to lure others into the fraudulent scheme." U.S.S.G. Supplement to Appendix C, amendment 617 at p. 189 (Nov. 1, 2001) (citing United States v. Orton, 73 F.3d 331 (11th Cir. 1996)). In other words, Ponzi scheme operators do not provide investors with gains out of the goodness of their hearts or to lessen damage to investors, but to keep their fraudulent scheme running. See United States v. Munoz, 233 F.3d 1117, 1125 (9th Cir. 2000) (noting that "schemers typically return money to investors to perpetuate the fraud and ensnare new investors, and not to mitigate damages to the current investors"). Accordingly, they should not reap sentencing benefits for making payments to investors that are designed to perpetuate their scheme.

The considerations that underlie the application note's prohibition against offsetting one investor's losses by another investor's gains also counsel against allowing a defendant to use a victim's gains on an earlier investment to offset losses on that same victim's later investment. Just as gains realized by an individual investor lure other investors into the scheme, those gains may also entice that same investor to make further contributions to the fraudulent enterprise. A repeat investor is essentially in the same position as a new investor for these purposes. To hold otherwise would be to reward defendants for conduct that perpetuates, and constitutes a component of, the Ponzi scheme. Accordingly, we conclude that the PSR's loss calculation was appropriate.

Alfonso contends that United States v. Orton, 73 F.3d 331 (11th Cir. 1996), requires victims' losses to be offset by their gains and that this requirement was adopted by the Guidelines. We disagree. In Orton, the Eleventh Circuit rejected the "net loss" method of calculating investor loss, which entails using one victim's gains to offset another victim's losses, as well as (as we will refer to it) the "risk" method, which involves assessing the amount of money placed at risk by the defendant's scheme, regardless of whether the victim suffered any losses on the investment. 73

F.3d at 334. In rejecting the "net loss" and "risk"methods, <u>Orton</u> spoke approvingly of the approach taken by the district court in that case (referred to as the "loss to losing victims" method), which was to "total[] the net losses of all victims who lost all or part of the money they invested." <u>Id.</u> Although this approach appears superficially consonant with the method advocated by Alfonso, <u>Orton</u> did not squarely address how losses suffered and gains made by a repeat investor should be assessed in calculating total loss, the issue before us today. Moreover, <u>Orton</u> noted that the approach used by the district court did not "reward a defendant who returns money in excess of an individual's initial 'investment' solely to entice additional investments and conceal the fraudulent conduct," <u>id.</u>, a consideration which, as set forth above, suggests that a victim's gains should be used to offset neither losses to another victim nor losses to that same victim later on in the scheme. In any event, although the Sentencing Commission adopted <u>Orton</u>'s rejection of the "net loss" method, it is not clear that it adopted any other aspect of the opinion. <u>See</u> U.S.S.G. Supplement to Appendix C, amendment 617 at p. 189 (Nov. 1, 2001) ("This amendment adopts the approach of [<u>Orton</u>] that excludes the gain to any individual investor in the scheme from being used to offset the loss to other individual investors because any gain realized by an individual investor is designed to lure others into the fraudulent scheme."). Accordingly, we believe that neither <u>Orton</u> nor Application Note 3(F)(iv) requires a different result in this case.

In sum, then, we conclude that the district court properly declined to offset victims' gains on one investment against their losses on subsequent investments. Whether the offsetting urged by Alfonso might in some cases be appropriate is a question that we need not address here. <u>Cf</u>. <u>Orton</u>, 73 F.3d at 333 ("Fraudulent schemes, however, come in various forms, and we must consider the nature of the

scheme in determining what method is to be used to calculate the harm caused or intended.").[4]

Alfonso also argues that the district court erred because it may have applied the "risk" method. We reject this argument because the district court does not appear to have used this method. Although the district court's statement of reasons cites two cases that appear to countenance use of the "risk" method, the district court expressly endorsed the loss calculations reflected in the presentence report.

Because we affirm the district court's general methodology, we need not reach Alfonso's remaining arguments.

The judgment is affirmed.

_____

---

[4]Alfonso argues that we approved his proposed method of loss calculation in United States v. Craiglow, 432 F.3d 816 (8th Cir. 2005). We do not believe that Craiglow assists Alfonso. Although the loss calculation that occurred in Craiglow, referenced in a footnote and contested on other grounds, apparently entailed "taking the total amount of monies invested by the investor and subtracting the money Craiglow paid to that investor," id. at 818 n.3, Craiglow does not directly address whether and how a victim's gains on one investment may be applied to offset the victim's subsequent losses. Moreover, there is very little information in Craiglow regarding the investment and payment patterns that occurred in that case.