# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-2870

_____

United States of America,

        Appellee,

v.

Carl McIntosh,

        Appellant.

\*
\*
\*
\*    Appeal from the United States
\*    District Court for the
\*    Eastern District of Missouri.
\*
\*       [PUBLISHED]
\*

_____

Submitted: January 11, 2007
Filed: July 6, 2007

_____

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

Carl McIntosh appeals the 87-month sentence imposed by the district court[1] after he pleaded guilty to aggravated identity theft, a violation of 18 U.S.C. §§ 1028A & 2 (2000 & Supp. IV 2004), and fraudulent use of unauthorized access devices, a violation of 18 U.S.C. § 1029(a)(2) (2000). After careful review, we affirm the judgment of the district court.

_____

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

I.

McIntosh and two other individuals were indicted by a federal grand jury on January 5, 2006, in a seven-count indictment. The indictment specifically charged McIntosh with conspiracy, two counts of aggravated identity theft, two counts of access device fraud, and one count of possession of fifteen or more access devices. Pursuant to a plea agreement McIntosh pleaded guilty on April 21, 2006, to one count each of aggravated identity theft and access device fraud. McIntosh was appointed new counsel prior to his sentencing date and filed several objections to the Presentence Investigation Report (PSR). A hearing was held on these objections prior to his sentencing on July 7, 2006.

McIntosh objected to statements in the PSR related to the calculation of his total offense level under the United States Sentencing Guidelines. These objections included the use of relevant conduct to determine loss amounts and the determination of both the number of participants in the scheme and the number of victims. McIntosh objected to how the PSR determined and calculated this information, as the PSR recommended a higher total offense level based upon these factors than what McIntosh contended was a correct calculation. After the district court heard testimony and argument on these matters, it overruled McIntosh's objections and adopted the PSR in its entirety.

The district court then proceeded to sentence McIntosh. By statute, the district court was required to impose a minimum sentence of two years on the aggravated identity theft count, with the sentence running consecutively to any sentence imposed on the access device charge. See 18 U.S.C. § 1028A. In determining the advisory Guidelines range on the device charge, the district court considered the facts set forth in the PSR as relevant conduct and found that the plea agreement itself specifically established the number of victims. As to the amount of loss, the district court combined the loss amount McIntosh claimed was an accurate measure of loss from the

credit card fraud with the amount of loss listed in the PSR that was attributed to the check fraud scheme. The check fraud scheme was uncharged conduct attributed to McIntosh, but the district court noted that there was a clear connection between the two fraud schemes through the people that were involved and the fact that both schemes operated under an intention to obtain money and property through fraud.

McIntosh's base offense level was six. The district court then adjusted the offense level upward eight levels based upon the amount of loss, United States Sentencing Guidelines Manual (USSG) § 2B1.1(b)(1)(E), up another two levels based upon the determination that the crimes had more than ten victims but less than fifty, USSG § 2B1.1(b)(2)(A)(i), and upward four levels for McIntosh's status as a leader of criminal activity that involved five more or participants, USSG § 3B1.1(a). McIntosh was then granted a three-level reduction in his offense level for acceptance of responsibility. USSG § 3E1.1(a), (b). This established an adjusted offense level of 17, which, when combined with McIntosh's category VI criminal history, produced an advisory Guidelines range of 51 to 63 months of imprisonment. The district court sentenced McIntosh to 63 months on the device count and imposed the required consecutive sentence of 24 months on the aggravated identity theft count–resulting in a total sentence of 87 months of imprisonment.

II.

McIntosh's arguments on appeal pertain to the calculation of his total offense level based upon the three enhancements the district court assessed at sentencing. Specifically, he contends the district court erred in determining that the amount of loss was between $70,000 and $120,000, that the district court erred in finding that the number of victims was more than ten but less than fifty, and that the district court erred in determining that McIntosh was a leader or organizer of a criminal activity involving five or more persons. The Government counters that McIntosh waived the

right to appeal these issues in his plea agreement, but that even if the waiver does not apply, the district court did not err in any of its challenged sentencing determinations.

"The 'general rule' is that 'a defendant is allowed to waive appellate rights,' including those involving the sentence imposed." United States v. Aronja-Inda, 422 F.3d 734, 737 (8th Cir. 2005) (quoting United States v. Andis, 333 F.3d 886, 889 (8th Cir.) (en banc), cert. denied, 540 U.S. 997 (2003)), cert. denied, 126 S. Ct. 1104 (2006). When we review a waiver, we must make two determinations: that the issue falls within the scope of the waiver and that both the plea agreement and the waiver were entered into knowingly and voluntarily. Id. Even if both of these determinations are decided in the affirmative, we will not enforce a plea agreement waiver if enforcement would cause a miscarriage of justice. Id. The burden is on the Government to "establish: (1) that the appeal is [clearly and unambiguously] within the scope of the waiver, (2) that the defendant entered into the waiver knowingly and voluntarily, and (3) that dismissing the appeal based on the defendant's waiver would not result in a miscarriage of justice." Id.

McIntosh's plea agreement included a section involving waiver of post-conviction rights, including sentencing issues. The waiver specifically stated that if the district court accepted the plea and if the district court, when determining McIntosh's sentence (1) applied the sentencing recommendations that the parties agreed to and, (2) "after determining a Sentencing Guidelines range, sentence[d] the defendant within that range," McIntosh "waive[d] all rights to appeal all sentencing issues, including any issues relating to the determination of the Total Offense Level." (D. Ct. R. at 15-16; Plea Agreement at 3-4.) Significantly, the appeal waiver did not restrict its applicability only to a sentence based on the agreed upon recommendations.

We determine that the appeal waiver included in the plea agreement encompasses all three issues McIntosh raises on appeal. In sentencing McIntosh, the district court applied each of the specific recommendations on which consensus was

reached between McIntosh and the Government, thus satisfying that aspect of the waiver. The district court then arrived at an advisory Guidelines sentencing range after making determinations on the issues where there was disagreement between the parties and sentenced McIntosh within that advisory range. The waiver required only that the district court accept the parties' sentencing stipulations where they could agree and sentence McIntosh within an advisory Guidelines range thereafter determined by the district court. The plain language of the plea agreement is thus satisfied by the district court's actions. See United States v. Martinez-Noriega, 418 F.3d 809, 815 (8th Cir. 2005) ("When a dispute arises over the meaning of a plea agreement, the court must 'discern the intent of the parties as expressed in the plain language of the agreement when viewed as a whole.'") (quoting United States v. Taylor, 258 F.3d 815, 819 (8th Cir. 2001)). In addition, all three of the issues raised by McIntosh involve the determination of his total offense level, which was a subject specifically included in the appeal waiver.

We also conclude that McIntosh's waiver was knowing and voluntary. The waiver was included in the plea agreement that McIntosh signed, and the district court questioned McIntosh about his understanding of the waiver during the change of plea hearing. See Aronja-Inda, 422 F.3d at 738 (finding that appeal waiver was knowing and voluntary based on presumption that the appellant read the plea agreement prior to signing it and the fact that the magistrate judge had probed the defendant's understanding of the waiver at the change of plea hearing). In addition, McIntosh does not argue that he entered into the agreement unknowingly or involuntarily. United States v. Blue Coat, 340 F.3d 539, 541-42 (8th Cir. 2003) (giving weight to the fact that Blue Coat did not claim that the waiver was not knowing or voluntary when determining if the appeal waiver should be enforced). Enforcing the appeal waiver would also not amount to a miscarriage of justice in this case. See Andis, 333 F.3d at 891-92 (discussing that the miscarriage of justice exception to enforcing an otherwise valid appeal waiver is extremely narrow and stating that "an allegation that

the sentencing judge misapplied the Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver").

Even if we determined that the plea wavier did not apply and reviewed the district court's sentencing calculations, we would affirm. We generally view "plea agreements as contracts, requiring the parties to fulfill their obligations under that contract." United States v. Fowler, 445 F.3d 1035, 1037 (8th Cir. 2006). In the plea agreement, McIntosh agreed that two levels should be added to his base offense level because of the number of victims. The agreement specifically stated that "[t]he parties recommend that the following Specific Offense Characteristic applies: 2 levels should be added . . . because the offense involved more than 10 victims." (D. Ct. R. at 18; Plea Agreement at 6.) McIntosh is bound by that concession and cannot now claim error in the district court's application of that recommendation.

McIntosh, however, did not agree with the Government's recommendations in the plea agreement regarding the amount of loss attributable to the scheme and McIntosh's role as a leader in the criminal activity. These objections were noted in the plea agreement and McIntosh objected to the PSR, which mirrored the Government's recommendations on these two issues.

We first look to the district court's loss calculation. The district court's loss determination included $57,496.06 that was attributed to the access device fraud. In addition, the district court included $26,943.47 in losses attributable to the uncharged check fraud scheme. The amounts are not disputed in this appeal by either party, but McIntosh contends that the district court erred in its conclusion that the check fraud scheme constituted relevant conduct that could properly be considered when determining the amount of loss under the Sentencing Guidelines. "A district court's determination whether actions were part of the same course of conduct as the counts of conviction is a question of fact reviewable only for clear error." United States v. Redlin, 983 F.2d 893, 897 (8th Cir.), cert. denied, 510 U.S. 820 (1993). "The district

court's method for calculating the amount of loss must be reasonable, but the loss 'need not be determined with precision.'" United States v. Craiglow, 432 F.3d 816, 820 (8th Cir. 2005) (quoting United States v. Whatley, 133 F.3d 601, 606 (8th Cir. 1998)). The burden is on the Government to prove the loss attributable to the defendant. Id.

"Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005) (quoting USSG § 1B1.3(a)(2)). The district court's conclusion that the check cashing scheme was relevant conduct attributable to McIntosh when determining the amount of loss was not clearly erroneous. The district court concluded that McIntosh was a participant in a broad fraud scheme that took many forms and that, because there was a clear connection between the individuals involved in the various methods of fraud and in the intent to fraudulently obtain money and property, it was proper to consider losses from the check fraud scheme when determining the Sentencing Guidelines range on the access device fraud charge. We agree, as both the information contained in the plea agreement stipulations and the testimony at the sentencing hearing sufficiently support this finding by the district court. There was not improper grouping of conduct as McIntosh alleges, but a finding that the conduct of the uncharged offenses was relevant to a loss determination on the access device fraud count to which McIntosh pleaded guilty.

Likewise, we find no error in the district court's finding that McIntosh was a leader of a criminal enterprise involving five or more people. See United States v. Mickle, 464 F.3d 804, 807 (8th Cir. 2006) (stating the standard of review), cert. denied, 127 S. Ct. 1308 (2007). The stipulations made by McIntosh and the evidence presented at the sentencing hearing sufficiently establish that McIntosh was a leader in this fraud conspiracy and that five or more people were involved in the various schemes. See id. at 807-08 (noting that the admissions made by the defendants and

the testimony of the FBI agent at the sentencing hearing "provided a sufficient foundation for the district court to conclude" that the defendants had operated as leaders through recruitment, organization, planning, and control). For the same reasons that it was not error for the district court to include losses attributable to uncharged conduct when determining loss amount, it was not improper for the district court to consider McIntosh's leadership role in the fraud scheme as a whole. Thus, even if we were to disregard the appeal waiver included in the plea agreement that binds McIntosh, we would still affirm the sentence imposed by the district court and find no error in its calculations under the Sentencing Guidelines.

## III.

Accordingly, we affirm the judgment of the district court.[2]

_____

_____

[2]McIntosh has filed a pro se motion to supplement the appellate brief filed by his appointed counsel, claiming the grand jury indictment was unsigned and therefore invalid. We generally do not accept pro se motions or briefs when an appellant is represented by counsel, see United States v. Payton, 918 F.2d 54, 56 n.2 (8th Cir. 1990), and as such we deny McIntosh's motion. In any event, a review of the record shows that the grand jury indictment included in the district court record is signed, contrary to McIntosh's contention.