# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1304

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| Djuan Hughes, also known as Juan, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: November 14, 2011
Filed: December 13, 2011

_____

Before SMITH, BOWMAN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

In this direct criminal appeal, Djuan Hughes challenges the sentence imposed by the District Court[1] after he pleaded guilty to conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, 21 U.S.C. § 841(a). Hughes contends that the court erred when it applied a two-level sentencing enhancement for possession of a dangerous weapon in connection with the offense of conviction. See U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2D1.1(b)(1) (2010). The

_____

[1] The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

government argues that Hughes waived his right to appeal this issue or, in the alternative, that the court did not err in applying the enhancement.

As a general rule, a criminal defendant can waive the right to appeal, including the right to appeal his sentence, if the issue the defendant seeks to raise on appeal was encompassed in the waiver, the defendant knowingly and voluntarily entered into both the plea agreement and the appeal waiver, and enforcing the waiver would not result in a miscarriage of justice. United States v. Andis, 333 F.3d 886, 889–92 (8th Cir. (en banc), cert. denied, 540 U.S. 997 (2003).

Hughes entered into a negotiated plea agreement with the government in which he agreed to plead guilty to the conspiracy charge, the government agreed to dismiss the other charges in the indictment and to refrain from further federal prosecution of crimes related to the charged conspiracy, the parties stipulated to the relevant facts, and the parties jointly recommended several Guidelines calculations. The plea agreement noted that the parties disputed whether the two-level dangerous-weapon enhancement applied but that they "agreed that the Court [would] determine the applicability . . . of this Specific Offense Characteristic at the time of sentencing." Plea Agreement at 7, 11. The agreement included a waiver of post-conviction rights, including the right to appeal certain sentencing issues. The waiver specifically stated that if the District Court accepted the guilty plea and "in sentencing the defendant, 1) applie[d] the recommendations agreed to by the parties herein, and 2) after determining a Sentencing Guideline[s] range, sentence[d] the defendant within that range," both parties "waive[d] all rights to appeal *all sentencing issues, including any issues relating to the determination of the Total Offense Level.*" Id. at 3–4 (emphasis added). Notably, the parties did not limit application of the waiver to an appeal from a sentence based solely on the agreed-upon Guidelines recommendations.

At the change-of-plea hearing, the District Court engaged in a lengthy colloquy with Hughes, confirming that Hughes had discussed the plea agreement with his

attorney and was satisfied with his attorney's representation; that Hughes understood the terms of the plea agreement, including the waiver of his appellate rights; that he was competent to proceed; that he was not forced or coerced into pleading guilty or entering into the plea agreement; and that the plea agreement was a faithful recitation of the deal he had struck with the government. Hughes acknowledged that the parties disputed the applicability of the dangerous-weapon enhancement and that the dispute would be resolved by the court. After a Presentence Investigation Report (PSR) was prepared, which included a recommendation to apply the enhancement, the District Court held a sentencing hearing during which both Hughes and the government presented testimony and argument in support of their respective positions on the enhancement. The court accepted the sentencing recommendations on which the parties agreed and resolved the disputed issue in the government's favor, ruling that the dangerous-weapon enhancement should apply. The court then increased Hughes's total offense level by two and calculated a resulting advisory Guidelines sentencing range of seventy to eighty-seven months. The court ultimately varied downward to impose a sixty-month sentence.[2]

On appeal, Hughes contests application of the dangerous-weapon enhancement, and the government argues that Hughes has waived his right to appeal this issue. Our court has had occasion to address appeal-waiver language identical to that appearing in Hughes's plea agreement. In United States v. McIntosh, 492 F.3d 956, 959 (8th Cir. 2007), the plea agreement at issue recited several sentencing recommendations

_____

[2]The District Court's downward variance resulted in a sentence that was not within the Sentencing Guidelines range as required in the plea agreement—it was below that range. Hughes did not argue in either his response in opposition to the government's motion to dismiss this appeal or in his merits brief that the below-guidelines sentence imposed by the District Court invalidated the appeal-waiver provision in his plea agreement. We thus consider any such argument to be abandoned. See United States v. Gonzales, 90 F.3d 1363, 1369–70 (8th Cir. 1996) (noting that where there is "no discussion whatsoever" of an issue, it is "deemed to be . . . abandon[ed]" on appeal).

on which the parties agreed, but it also identified three potentially applicable enhancements on which the parties disagreed. The district court in <u>McIntosh</u> accepted the agreed-upon sentencing recommendations and then applied the contested enhancements to calculate the total offense level. McIntosh appealed, arguing that the district court erred in applying the enhancements. We enforced the appeal waiver in <u>McIntosh</u> because the district court "applied each of the specific recommendations on which consensus was reached . . . then arrived at an advisory Guidelines sentencing range after making determinations on the issues where there was disagreement between the parties and sentenced McIntosh within that advisory range." <u>Id.</u> Because "[t]he waiver required only that the district court accept the parties' sentencing stipulations where they could agree and sentence McIntosh within [the] . . . range thereafter determined by the district court," we held that the plea-agreement requirements were satisfied and the waiver was enforceable. <u>Id.</u> We also noted that the claims raised by McIntosh on appeal were each related to the determination of his total offense level and that an appeal of that determination was specifically waived in the plea agreement. <u>Id.</u> at 960.

Because the facts and waiver language in this case are materially indistinguishable from those addressed by our court in <u>McIntosh</u>, <u>see</u> <u>Drake v. Scott</u>, 812 F.2d 395, 400 (8th Cir. 1987) ("One panel of this Court is not at liberty to disregard a precedent handed down by another panel. Only the Court en banc can take such action."), because the record establishes that the waiver was entered into knowingly and voluntarily, and because enforcement of the waiver will not result in a miscarriage of justice, we will enforce the appeal waiver and dismiss the appeal, <u>see</u> <u>Andis</u>, 333 F.3d at 889–92.

_____