# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3530

_____

United States of America

*Plaintiff - Appellee*

v.

Chris Maurice Welch

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 13, 2019
Filed: February 27, 2020

_____

Before LOKEN, GRASZ, and STRAS, Circuit Judges.

_____

GRASZ, Circuit Judge.

Chris Welch was charged with illegal gun possession. At trial, the district court[1] admitted DNA and drug evidence over Welch's objections. Welch now

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

appeals, challenging admission of the evidence and claiming the government failed to prove the necessary scienter requirement. We affirm.

## I. Background

A confidential informant told Minneapolis Police Officer Jeffrey Werner he witnessed Chris Welch storing guns and drugs in a house on Aldrich Avenue North. The informant described Welch as "a black male about 30-35 years old, about 6'0 tall with a medium build and medium afro."

To verify the tip, Officer Werner searched for Welch's name on the Minnesota Department of Motor Vehicles ("DMV") website. He found a "Chris Maurice Welch" whose description generally matched the one given by the informant. Officer Werner showed the informant Welch's DMV photos, and the informant confirmed Welch's identity. Because Welch's criminal history revealed a prior felony conviction, Officer Werner knew it was illegal for Welch to possess a gun. Officer Werner then surveilled the Aldrich house. He saw foot traffic at the house consistent with drug-distribution. Another officer saw Welch sitting inside a car in the driveway next to the house.

Officer Werner obtained a warrant to search the Aldrich house. Police officers followed Welch to the house and began their search shortly after Welch went inside. The officers found three men, including Welch, in a bedroom. Welch's hair was in braids. In that same room, officers found three broken cellphones. The officers also found inside the house four guns and "a large amount of synthetic marijuana," some of which was packaged for sale. Outside the house, police found two men in a car with marijuana and a loaded gun.

Welch was arrested, handcuffed, and given *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). He agreed to talk to Officer Werner. Their conversation, as transcribed by the district court, follows:

*Werner*: Okay, well it's customary too, is when we do a search warrant and find guns in the house, we try to take DNA of everyone that's in the house. So . . .

*Welch*: Okay, well my DNA is already in the system.

*Werner*: I know, but we've got to take one anyway. (inaudible) So you're cool with me taking your DNA sample real quick? (inaudible) So you've had this done before and stuff?

*Welch*: Yeah, I've done like three of them before (inaudible) DNA for kids.

*Werner*: Oh, for child support stuff?

*Welch*: Yeah (laughs).

Following this exchange, and without telling Welch he could refuse, Officer Werner took Welch's DNA with a cheek swab. The police then took Welch to the county jail.

Months later, the DNA test results showed that a Ruger .22 caliber pistol found at the Aldrich house very likely had Welch's DNA on it. Federal prosecutors charged Welch with illegal gun possession under 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The prosecution also intended to introduce at trial evidence that Welch — a month after his arrest — had in his car two bags of the same kind of synthetic marijuana as that found at the Aldrich house. Welch moved to exclude the DNA evidence and the synthetic marijuana evidence. However, the evidence was admitted and Welch was convicted.

Welch now appeals the district court's admission of the DNA and synthetic marijuana evidence. He also argues his conviction is invalid in light of a recent Supreme Court decision. We affirm his conviction.

## II. Analysis

### A. DNA Evidence

Welch argues the officers violated the Fourth Amendment when they arrested him and took his DNA. *See* U.S. Const. amend. IV (prohibiting unreasonable searches and seizures). According to Welch, because the officers never had probable cause to arrest him and they never had consent to take his DNA, the DNA evidence is inadmissible. *See Weeks v. United States*, 232 U.S. 383, 393 (1914) (articulating the "exclusionary rule" generally prohibiting the use of unconstitutionally-obtained evidence); *see also Elkins v. United States*, 364 U.S. 206, 223 (1960) (applying the exclusionary rule to evidence obtained by state officers and used in a federal prosecution).

"We review a district court's findings of fact for clear error and its conclusions of law regarding its denial of a motion to suppress de novo." *United States v. Lothridge*, 332 F.3d 502, 503 (8th Cir. 2003).

We turn first to Welch's arrest. Under the Fourth Amendment, a warrantless arrest must be based on probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "Probable cause exists to make a warrantless arrest when, at the moment of the arrest, the collective knowledge of the officers involved was 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *United States v. Wajda*, 810 F.2d 754, 758 (8th Cir. 1987) (internal citation omitted) (quoting *Beck*, 379 U.S. at 91). Probable cause depends on the totality of the circumstances. *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003).

Welch argues that probable cause did not exist. He characterizes the informant's description ("a black male about 30–35 years old, about 6'0 tall with a medium build and medium afro") as false and inaccurate. And he argues that, because the police never saw him selling or storing drugs at the Aldrich house, his mere presence at the house could not provide probable cause to arrest him. *See Ybarra v. Illinois*, 444 U.S. 85, 90–91 (1979) (finding a person's proximity to suspected criminals insufficient to establish probable cause).

Considering the totality of the circumstances, we disagree. The police matched the informant's somewhat vague description to Welch's DMV photos. They observed foot traffic consistent with the informant's allegation that drugs were at the house. They knew Welch was prohibited from gun possession and they confirmed he spent time at or near the Aldrich house. During the search of the house, police found drugs and guns. Outside the house, in a parked car, police found more drugs and another gun. And police identified Welch as one of the three men inside the house standing next to three broken cellphones. While the informant got Welch's hairstyle wrong, he got the gun and drug possession right. *See Illinois v. Gates*, 462 U.S. 213, 245 n.14 (1983) ("We have never required that informants used by the police be infallible, and can see no reason to impose such a requirement in this case."). The officers' knowledge warranted prudent belief that Welch had committed or was committing an offense; they had probable cause to arrest him.

But probable cause alone does not resolve the DNA evidence's admissibility. The police did not have a warrant to take Welch's DNA; they relied on his consent to swab his cheek. Free and voluntary consent renders a search reasonable under the Fourth Amendment. *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005). If the government shows that Welch knowingly and voluntarily consented to the cheek swab, then the DNA evidence is admissible. *See id.* The government's "burden cannot be discharged by showing mere acquiescence to a claim of lawful authority." *Id.* "Rather, the government must show that a reasonable person would have believed

-5-

that the subject of a search gave consent that was the product of an essentially free and unconstrained choice that he or she was making." *Id.* (quoting *United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004)). We review a district court's finding of voluntary consent for clear error. *Id.*

The district court explained that Welch's age, intelligence, sobriety, and experience with the criminal justice system, coupled with his *Miranda* warning, supported a finding of voluntary consent. Additionally, the district court found that, while Welch was under arrest when the DNA swab was taken, he had not been detained and questioned for long. The district court also noted the interview was "calm and cordial" and free from police intimidation. In fact, as the district court pointed out, "Welch responded to questions cooperatively and in a steady voice, even chuckling at times." And in the midst of this even-keeled conversation, Welch complied with Officer Werner's request for a cheek swab "without hesitation." According to the district court, the facts surrounding the interrogation support a finding of voluntary consent.

The district court's account of the conversation between Welch and Officer Werner is well-supported by the record. And besides casually explaining that his "DNA is already in the system," Welch never expressed any reluctance in providing the sample. After reviewing the entire record, we are not "left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *United States v. Booker*, 269 F.3d 930, 931–32 (8th Cir. 2001)). As such, we find no clear error in the district court's finding of voluntary consent. Given Welch's lawful arrest and voluntary consent, the district court properly denied Welch's motion to suppress the DNA evidence.

## B. Synthetic Marijuana Evidence

The district court also admitted evidence of the synthetic marijuana found in Welch's car a month after the Aldrich house search. According to Welch, this violated Federal Rule of Evidence 404(b)(1), which states "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The district court, however, admitted the evidence after finding it probative of Welch's motive to possess the gun. *See* Fed. R. Evid. 404(b)(2) (permitting evidence of prior bad acts to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").

"We review the admission of [Rule 404(b)] evidence for abuse of discretion, and we will reverse only when such evidence clearly has no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Brown*, 148 F.3d 1003, 1009 (8th Cir. 1998).

Under the circumstances of this case, the synthetic marijuana evidence made it more likely that Welch knew of and possessed the .22 caliber Ruger handgun. Welch's defense — that he was not involved with the guns and drugs at the house — is far less plausible when he was later found with the exact same (unique) kind of synthetic marijuana as was earlier found in the Aldrich house. Moreover, this court has held that drug possession can be relevant to motive in gun-possession cases. *United States v. Williams*, 796 F.3d 951, 961–62 (8th Cir. 2015). And facts tying a defendant to drug-trafficking may show a defendant's "motive, opportunity, intent, and plan" to possess a gun. *United States v. Claybourne*, 415 F.3d 790, 797 (8th Cir. 2005). As such, we see no reason to suppose the synthetic marijuana evidence was only introduced to prove Welch's criminal propensity. The district court did not abuse its discretion.

## C.  *Rehaif* Scienter Requirement

Welch finally argues that his conviction is invalid in light of the Supreme Court's recent *Rehaif v. United States* decision.[2]  139 S. Ct. 2191 (2019).  Under *Rehaif*, the government in a § 922(g) prosecution must prove the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm."  *Id.* at 2200.  And while at trial Welch stipulated to being a felon prohibited from gun possession, the government never proved, at the time of the Aldrich house search, he *knew* he had "been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).

Because Welch failed to raise the issue at trial, we review for plain error. *United States v. Hollingshed*, 940 F.3d 410, 415 (8th Cir. 2019).  Plain error is "(1) an error (2) that was obvious and (3) that affected the defendant's substantial rights and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (citing *United States v. Olano*, 507 U.S. 725 (1993)).

To prove the alleged error affected his substantial rights, Welch must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  *Id.* at 415–16 (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)).  But this he cannot do.  Welch has received and served several prison sentences longer than one year for felony convictions.  It is not reasonably probable that, if the government had to prove Welch's knowledge of a previous conviction for "a crime punishable by imprisonment for a term exceeding one year," he would have been acquitted.  18 U.S.C. § 922(g)(1); *see also Hollingshed*, 940 F.3d at 415 (finding no plain error when the defendant was previously incarcerated for a year or more).

---

[2]Welch, through counsel, moved for leave to brief this court on *Rehaif*.  The motion is granted; we here consider Welch's *Rehaif* argument.

## III. Conclusion

The district court rightly denied Welch's motion to suppress the DNA evidence, and it exercised its sound discretion by admitting the synthetic marijuana evidence. And because the Supreme Court's *Rehaif* decision leaves Welch's conviction unaffected, we affirm his conviction.[3]

———————————————————

[3]Welch raised several arguments pro se, and moved to supplement the record and obtain new counsel. We deny the pro se motion and do not consider his pro se arguments, as Welch is presently represented by counsel. *United States v. McIntosh*, 492 F.3d 956, 961 n.2 (8th Cir. 2007) (denying an appellant's pro se motion because he was represented by counsel).