# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3219
_____

United States of America

*Plaintiff - Appellee*

v.

Timothy Earl Caudle

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 14, 2020
Filed: August 7, 2020

_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Timothy Caudle pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, he objected to a recommended two-level enhancement because the offense "involved" three to seven firearms. USSG § 2K2.1(b)(1)(A). Caudle admitted he possessed an assault rifle found in the home he shared with his wife but denied he possessed a nine-millimeter handgun also found in the home or a Springfield XD .40 caliber pistol (the "Springfield") found in

his wife's vehicle parked in front of the home. The district court[1] found Caudle possessed the three firearms and imposed a within-range sentence of 55 months imprisonment. Caudle appeals, arguing the district court clearly erred in finding he constructively possessed the Springfield pistol. He does not appeal the finding he possessed the handgun found in his home. He also argues the court plainly erred by accepting his guilty plea without establishing he knew his prohibited status as a felon, as required by the Supreme Court's post-plea decision in Rehaif v. United States, 139 S. Ct. 2191 (2019). Finding no clear error or plain error, we affirm.

## I. The Constructive Possession Issue.

Caudle's felon-in-possession conviction arose when a 911 call from his wife, Candace, led Deputy Sheriff Douglas Bjork to Caudle's home in Jacksonville, Arkansas. At sentencing, Bjork testified that he found a distraught Candace sitting outside the home on the bumper of her vehicle. She told Bjork that Caudle was "cussing at her and threatening to beat her and threatening to kill her," pointed a pistol at her face, and fired one round from an assault rifle into a stuffed animal. Caudle, who was pacing back and forth on the front porch, yelled at Bjork he was "not going to go to jail, no matter what." Bjork told Caudle to wait on the porch. When he instead entered the home, Candace warned Bjork that Caudle had a gun. Caudle returned outside without a firearm and belligerently approached Bjork and Candace in a threatening manner. Bjork attempted to handcuff Caudle, who attempted to flee. Bjork drew his taser and called for backup. Caudle stopped but resisted handcuffing. Bjork wrestled Caudle into handcuffs and placed him in the back of Bjork's car.

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

Candace provided written consent to search the Caudle home. Bjork saw a stuffed animal with a hole through its middle and a hole in the floor beneath it. Deputies found a loaded assault rifle on the bed next to a magazine capable of holding 30 bullets, a nine-millimeter handgun under the living room couch, an empty .40 caliber magazine sitting on the couch, and spent .40 caliber shell casings on the bedroom dresser. Candace told the deputies a .40 caliber handgun was in the house or in her vehicle. They found the Springfield in the passenger side of the vehicle. Candace owned all three firearms and the vehicle.

In addition to Bjork's testimony, BATF Special Agent Timothy Boles testified Candace told the grand jury that indicted Caudle that she kept the three firearms "on top of the bedroom closet," and that Caudle had driven her vehicle "maybe once [or] twice," including around the time of his arrest when he "[p]robably took it to the gas station and put gas in it for [her]."

Based on this testimony, the government argued there was sufficient evidence to find that Caudle possessed the Springfield .40 caliber firearm:

> [The Caudles] are a married couple. They have one vehicle. There's two people. They both can drive the vehicle. She has indicated through grand jury testimony that he has driven that vehicle before. There's the .40 caliber ammunition that is located inside their bedroom. There's the .40 caliber magazine that is located on the couch.
>
> So all of those taken together, Your Honor, [Caudle] has constructively possessed [the Springfield].

The district court, stating "I consider it close," overruled Caudle's objection and found that he constructively possessed the Springfield.

In applying a § 2K2.1(b)(1) enhancement, the court counts only those firearms that the defendant obtained, possessed, or distributed. USSG § 2K2.1, comment. (n.5). "A defendant's possession of firearms may be actual or constructive, sole or joint." United States v. Vega, 720 F.3d 1002, 1003 (8th Cir. 2013). The government had the burden to prove Caudle constructively possessed the Springfield by a preponderance of the evidence. United States v. Sacus, 784 F.3d 1214, 1219 (8th Cir.), cert. denied, 136 S. Ct. 348 (2015). Constructive possession "is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." United States v. Cross, 888 F.3d 985, 990 (8th Cir.) (quotation omitted), cert. denied, 139 S. Ct. 351 (2018). The circumstances "must show a sufficient nexus between the defendant and the firearm." Id. at 991. "Stated differently, constructive possession requires knowledge of an object, the ability to control it, and the intent to do so." United States v. Kelley, 594 F.3d 1010, 1014 (8th Cir. 2010) (quotation omitted). "[T]he factfinder may infer defendant had control of the firearm based on all the circumstances." United States v. Byas, 581 F.3d 723, 726 (8th Cir. 2009).

Caudle argues "the facts do not support a finding that Mr. Caudle had knowledge of, access to, and intended to control the firearm in his wife's car." We disagree. Caudle lived on the property where all three guns were found. Though Candace testified to the grand jury that she owned the guns, "ownership is irrelevant to the issue of possession." United States v. Boykin, 986 F.2d 270, 274 (8th Cir.), cert. denied, 510 U.S. 888 (1993). Candace testified she kept all three guns in the bedroom closet, where Caudle obviously had access and the ability to control. The day the guns were found, Candace told Bjork that Caudle had pointed a handgun at her face and shot a stuffed animal with the assault rifle. Deputies found the assault rifle and a magazine in plain view on the bed the couple shared and a handgun under the living room couch. Candace told Bjork there was another pistol somewhere in their home or her car. Another deputy found the .40 caliber Springfield in a vehicle

Candace testified Caudle had recently driven. In addition, a .40 caliber magazine was found on the couch and spent .40 caliber casings on the bedroom dresser.

On appeal, Caudle relies primarily on the Fifth Circuit's decision in United States v. Houston, 364 F.3d 243 (5th Cir. 2004). In that case, the defendant told law enforcement officers he believed there were two guns in the couple's hotel room, which were in plain view. His wife disclosed a pistol -- the third firearm -- in her purse. The district court found the defendant constructively possessed the third gun and imposed a two-level § 2K2.1(b)(1)(A) enhancement. The Fifth Circuit reversed, concluding that these circumstances did not support a finding that the defendant constructively possessed the pistol in his wife's purse. 364 F.3d at 249. Caudle contends the circumstances in this case mirror Houston because the Springfield was not in plain view, and Candace told the deputies a third gun might be in her vehicle. He argues that the fact he drove the vehicle once or twice did not establish knowledge, access, and intent to control the firearm.

Although Caudle's constructive possession of the Springfield was not as obvious as in many of our constructive possession cases, such as Byas, 581 F.3d at 726, we conclude the district court's finding on this "close" issue was not clearly erroneous. The three guns were kept in Caudle's home, where he had unrestricted access. On the day in question, when Caudle had assaulted his wife with two of the guns, all three were found scattered around the couple's home and their sole vehicle. Candace testified Caudle had used the vehicle at about that time. The .40 caliber magazine and spent .40 caliber casings found in the home strengthen the nexus between Caudle and the .40 caliber Springfield as Caudle actually or constructively possessed this ammunition. See Cross, 888 F.3d at 991. Unlike the facts in Houston, the couple's joint occupancy of the home and joint possession of the three firearms "support an inference that [Caudle] had knowledge of, and access to" the Springfield pistol found in his wife's vehicle. 364 F.3d at 248. The undisputed facts taken

together establish a nexus between Caudle and the Springfield sufficient to support the district court's finding of constructive possession. There was no clear error.

## II. The Rehaif Issue.

The district court accepted Caudle's guilty plea to unlawful possession of the assault rifle on May 16, 2019. On June 21, the Supreme Court held in Rehaif that, to convict a defendant of violating 18 U.S.C. § 922(g), the government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. Caudle argues the district court committed plain error by accepting his guilty plea without informing him of the nature of the charge to which he was pleading and determining that there was a factual basis for the plea, thereby violating Rules 11(b)(3) and 11(b)(1)(G) of the Federal Rules of Criminal Procedure. See United States v. Coleman, 961 F.3d 1024, 1027-28 (8th Cir. 2020).[2]

Though the district court accepted Caudle's plea before the Supreme Court's decision in Rehaif, "we measure whether an error is plain based on the law at the time of appeal." Coleman, 961 F.3d at 1028. Accordingly, we held in Jawher that this Rule 11(b) violation is "(1) an error, (2) that is plain." 950 F.3d at 579. These are the first two elements of the plain error standard established in United States v. Olano, 507 U.S. 725 (1993). However, to obtain plain error relief, Caudle must also establish that the error affected his substantial rights. To make this showing, he must "demonstrate a reasonable probability that, but for the error, he would not have

---

[2]Caudle also argues it was error to accept his guilty plea because the indictment failed to allege the element of the offense established in Rehaif. This contention is without merit. "An indictment is normally sufficient if its language tracks the statutory language." United States v. Jawher, 950 F.3d 576, 579 n.2 (8th Cir. 2020) (quotation omitted). There was no error, much less plain error.

entered the plea." Coleman, 961 F.3d at 1030 (quotation omitted); see United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004).

The relevant status for Caudle's felon-in-possession offense is that he "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Caudle argues that, because he had never been sentenced to prison for more than one year when he was indicted, he would not have pleaded guilty had he understood the government's burden to prove the Rehaif element. This contention will not withstand close scrutiny. Paragraph 28 of his Presentence Investigation Report (PSR) recited that, while Caudle's initial sentence for a 1992 California grand theft offense was one year imprisonment and sixty days probation, his probation was revoked in 1994 and he was sentenced to three years imprisonment. Paragraph 35 recited that, in 2005, he was convicted of the Arkansas offense of possession of a firearm by a felon. This criminal history would undoubtedly have provided sufficient evidence to prove that Caudle knew his status as a § 922(g)(1) felon at the time he committed this offense. See United States v. Welch, 951 F.3d 901, 907 (8th Cir. 2020); United States v. Hollingshed, 940 F.3d 410, 415-16 (8th Cir. 2019).

The "lack of a plausible ignorance defense means that any § 922(g) defendant who served more than a year in prison on a single count of conviction will face an uphill battle to show that a Rehaif error in a guilty plea affected his substantial rights." United States v. Williams, 946 F.3d 968, 974 (7th Cir. 2020). Here, unlike the defendants in Coleman and Williams, Caudle does assert on appeal that he would not have pleaded guilty if he had known of Rehaif. But the conclusory assertion is not plausible. At the start of the sentencing hearing -- more than three months after the Rehaif decision -- the district court asked Caudle, "Do you think there's any reason you should be permitted [to] withdraw the plea of guilty that you entered back in May?" Caudle replied, "No, sir." The PSR criminal history paragraphs, to which Caudle did not object, recited that he had twelve adult criminal convictions spanning

more than thirty years.  As in <u>Coleman</u>, given these circumstances, Caudle "has not shown a reasonable probability that he would not have pleaded guilty had he known of <u>Rehaif</u>.  961 F.3d at 1030.  Thus, there was no plain <u>Rehaif</u> error that warrants giving Caudle another opportunity to withdraw the guilty plea that he did not seek to withdraw at sentencing.

The judgment of the district court is affirmed.

_____