# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2608

_____

United States of America,       *
                                     *

          Appellee,        *

                                     *   Appeal from the United States
     v.                        *   District Court for the Western
                                     *   District of Missouri.

Robert A. Blaylock, also known as   *
Robert Hawthorne,              *   [PUBLISHED]
                                     *

          Appellant.       *

_____

Submitted: March 12, 2008
Filed: July 31, 2008

_____

Before WOLLMAN, HANSEN, and MELLOY, Circuit Judges.

_____

PER CURIAM.

A jury convicted Robert Blaylock of possessing a firearm and ammunition after being convicted of a felony and of distributing crack cocaine. Blaylock challenges the district court's[1] admission of evidence seized after a warrantless search of his car and evidence seized pursuant to a search warrant for his home. Blaylock also challenges the sufficiency of the superseding indictment on which he was tried and the district

___

[1]The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

court's denial of his motion in limine concerning evidence destroyed prior to trial. We affirm.

I.    Background

On August 30, 2004, detective Ricky Ropka of the Kansas City Police Department approached Blaylock in an area of Kansas City where narcotics trafficking had been reported. Detective Ropka, who was undercover, asked Blaylock about purchasing $20 worth of crack cocaine. Blaylock agreed to sell Detective Ropka the cocaine. Blaylock walked to a blue Nissan four-door with Missouri license plate number 882-WGK, reached into the car, and then returned to Detective Ropka. Detective Ropka gave Blaylock $20 for a piece of crack cocaine. Detective Ropka asked for Blaylock's contact information for future purchases, and Blaylock gave him a piece of paper with a phone number written on it. Blaylock told Detective Ropka to call him and that Blaylock would "hook [him] up."

Officers determined the Nissan Blaylock reached into during the transaction was registered to Blaylock and Marilyn King, with an address of 7339 Wabash, Kansas City, Missouri. On September 8, 2004, Detective Ropka drove past the residence at 7339 Wabash and saw the blue Nissan in the driveway. Officers set up surveillance on the residence, and Detective Ropka called the number Blaylock gave him. Blaylock answered the phone and agreed to sell Detective Ropka $40 worth of crack cocaine. Blaylock instructed Detective Ropka to meet him in a parking lot at 75th and Prospect in Kansas City, Missouri.

Shortly after the telephone call between Blaylock and Detective Ropka, officers observed King and another woman leave 7339 Wabash in the blue Nissan. The women traveled to 75th and Prospect and parked next to Detective Ropka's car. King, the driver, stayed in the car, while the passenger went into a store. King motioned for Detective Ropka to get into her car, and he obliged. Detective Ropka asked King

where Blaylock was, and King stated Blaylock stayed at the house. King then gave Detective Ropka two pieces of crack cocaine, and Detective Ropka gave King $40. Detective Ropka returned to his car, and the female passenger got back into the blue Nissan. King drove the blue Nissan back to 7339 Wabash, and the two women entered the residence.

On September 10, 2004, officers applied for a search warrant for 7339 Wabash, including information about the events of August 30 and September 8 in the affidavit in support of the search warrant. An associate circuit judge for Jackson County, Missouri, approved the search warrant. The officers did not obtain a search warrant for the blue Nissan.

Blaylock was home when officers executed the search warrant on September 16, 2004. Inside the house officers seized a box of nine millimeter ammunition, a driver's license and a social security card bearing Blaylock's name, and an electronic scale. Officers photographed and cataloged the seized evidence. The blue Nissan was parked in the driveway. Officers searched the Nissan, locating crack cocaine in the center console area and a nine millimeter, semi-automatic pistol in the trunk. Blaylock was arrested and detained.

On September 17, 2004, Detective Gregory Pelter took Blaylock from the detention center to an interview room. Blaylock was given an advice of rights form, which listed his rights under Miranda.[2] Blaylock stated he understood his rights and signed the form. Detective Pelter spoke with Blaylock about his drug trafficking activities, his criminal history, and the items seized the day before. Blaylock admitted he had been selling crack cocaine for approximately four to five months. He stated he worked with Marilyn King to obtain and sell crack. He stated the ammunition seized had been given to him approximately one year before the search. He denied knowing about the nine millimeter pistol in the blue Nissan's trunk, but stated he

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

might have handled the gun previously. Blaylock acknowledged his prior felony convictions.

A grand jury returned an indictment charging Blaylock with possessing a firearm after being convicted of a felony (Count One) and with possessing ammunition after being convicted of a felony (Count Two), violations of 18 U.S.C. § 922(g)(1). These charges were based upon the nine millimeter pistol and ammunition seized on September 16, 2004. Blaylock filed a motion to suppress evidence seized pursuant to the warrant and during the warrantless search of the blue Nissan. A magistrate judge[3] recommended the district court deny the motion, and the district court adopted the magistrate's recommendation.

A grand jury returned a superseding indictment, adding two counts of distribution of crack cocaine, violations of 21 U.S.C. § 841(a)(1), based upon the two drug transactions involving Detective Ropka. The government obtained the superseding indictment after the grand jury heard summary testimony from an investigating officer. The case proceeded to trial on the superseding indictment.

At trial, the government presented testimony from officers who participated in the search at 7339 Wabash regarding items that were seized from the home. The items themselves were not introduced into evidence because they had been destroyed after Blaylock was indicted, but prior to trial. The government introduced photographs of the items. The destroyed evidence included the box of ammunition, the identification cards with Blaylock's name on them, and the electronic scale. Blaylock unsuccessfully moved to exclude the testimony and photographs prior to trial.

The jury found Blaylock guilty of three of the four charges against him, acquitting on the second count of distribution of crack cocaine (Count Four). The

---

[3]The Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

district court sentenced Blaylock to 86 months' imprisonment on each of the three counts of conviction, with the terms to be served concurrently. This appeal followed.

II.     Discussion

Blaylock raises four issues on appeal: (1) the denial of his motion to suppress evidence obtained during the warrantless search of the blue Nissan; (2) the denial of his motion to suppress evidence obtained pursuant to the search warrant issued for 7339 Wabash; (3) the sufficiency of the superseding indictment; and (4) the admission of testimony and photographic evidence related to items destroyed prior to trial.

A.      Automobile Search

Blaylock alleges the search of the blue Nissan parked in the driveway of 7339 Wabash occurred in violation of his Fourth Amendment right to be free from unreasonable searches. In denying Blaylock's motion to suppress evidence seized from the car, the district court concluded no exigent circumstances necessitated the search and the search was not an inventory search or a search incident to arrest. Neither party challenges these conclusions. The court relied solely upon the "automobile exception" as a justification for the warrantless search, and we will likewise focus our attention on that exception to the warrant requirement. We review for clear error the factual findings of the district court and consider de novo whether the motion to suppress was properly denied. United States v. Roberson, 439 F.3d 934, 939 (8th Cir. 2006).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, a warrant is required to ensure a search's reasonableness. Maryland v. Dyson, 527 U.S. 465, 466 (1999). Starting with Carroll v. United States, the Supreme Court recognized an exception to the Fourth

Amendment's warrant requirement when officers search an automobile. 267 U.S. 132, 153 (1925). Originally, the rationale for the exception was the practical challenges of obtaining a warrant for a vehicle that could be "quickly moved" out of the jurisdiction. Id. Since Carroll, the Court has identified an additional justification for the exception: "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." South Dakota v. Opperman, 428 U.S. 364, 367 (1976). This reduced expectation in privacy is based, in part, upon the relative openness of a car's passenger compartment, Cardwell v. Lewis, 417 U.S. 583, 590 (1974), but the Court has also applied the exception to searches of car trunks, Cady v. Dombrowski, 413 U.S. 433, 446 (1973), and other closed compartments, Chambers v. Maroney, 399 U.S. 42, 44 (1970). This is because the reduced expectation of privacy is also based upon "the pervasive regulation of vehicles capable of traveling on the public highways." California v. Carney, 471 U.S. 386, 392 (1985). With these two theoretical underpinnings, the automobile exception "justif[ies] searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." Id. No exigency beyond that created by the ready mobility of an automobile is required for a warrantless search of a car to fall within the exception. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996).

Within this framework, we consider whether the search of the blue Nissan comports with the Fourth Amendment. The testimony about King driving the Nissan to meet Detective Ropka demonstrates that the Nissan was readily mobile. And, the car's registration to Blaylock and King indicates it was subject to regulations that necessarily diminished any expectation of privacy in the vehicle. The question, then, is whether probable cause existed for the search. We conclude there was more than sufficient probable cause for the officers to conclude the Nissan contained evidence of illegal activity. On two separate occasions within the month prior to the search, the Nissan was used to further drug trafficking. On August 30, Blaylock retrieved crack cocaine from the Nissan before selling it to Detective Ropka. On September 8, the transaction between King and Detective Ropka occurred in the car. These facts

demonstrated a clear link between the car and drug trafficking sufficient to provide probable cause to search the Nissan.

B.     Search of the Residence at 7339 Wabash

Blaylock alleges the district court erred in denying his motion to suppress evidence seized pursuant to the search warrant executed at 7339 Wabash. Blaylock argues the affidavit supporting the search warrant was fatally flawed because it did not name Blaylock, it included false information, and it included hearsay statements. These arguments are without merit.

None of the arguments raised by Blaylock undermines the district court's conclusion that the search conducted pursuant to the warrant comported with the Fourth Amendment. First, a search warrant need not name any particular defendant against whom evidence will be used in order to be valid; it must only "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Second, Blaylock does not identify any specific false statement included in the affidavit. Broad accusations of falsity are insufficient to sustain a challenge to the sufficiency of a warrant. Third, "hearsay may be the basis for issuance of a warrant 'so long as there . . . [is] a substantial basis for crediting the hearsay.'" United States v. Ventresca, 380 U.S. 102, 108 (1965) (alteration in original) (citation omitted). The investigating officers' personal observations provided sufficient grounds for crediting the statements made by King and included in the affidavit.

C.     Sufficiency of the Superseding Indictment

Blaylock alleges the charges added in the superseding indictment were not supported by competent evidence because the evidence was limited to an officer testifying before the grand jury about the drug transactions on August 30 and

September 8. This argument fails. It is well-established that the grand jury may return an indictment based solely upon summary testimony presented by a law enforcement officer. See Costello v. United States, 350 U.S. 359, 363 (1956). Thus, the district court did not clearly err in denying Blaylock's motion to dismiss the superseding indictment. See United States v. Gladney, 474 F.3d 1027, 1030 (8th Cir. 2007) (stating standard of review).

D.      Evidence Related to Destroyed Items

Blaylock appeals the district court's denial of his motion in limine as to any testimony or evidence related to items seized during the search of 7339 Wabash, but destroyed prior to trial. We review a district court's denial of a motion in limine for abuse of discretion. United States v. Noe, 411 F.3d 878, 887 (8th Cir. 2005).

Blaylock's argument in support of the motion in limine is based upon the Best Evidence Doctrine, and it is misplaced. Nothing in the Federal Rules of Evidence prohibits the government from relying upon testimony from officers who seized items during a search, instead of introducing the items themselves. See Christopher B. Mueller & Laird C. Kirkpatrick, Evidence § 10.1 (3d ed. 2003). Likewise, provided the proper foundation is laid, the government may introduce photographs of tangible objects instead of the objects themselves. Id. Thus, it was well within the district court's discretion to allow the evidence.

III.    Conclusion

For the forgoing reasons, we affirm the judgment of the district court.

MELLOY, Circuit Judge, concurring.

I concur in the judgment of the court and write separately to address concerns I have about the automobile search analyzed in Section II.A.  Despite this seemingly straightforward application of the automobile exception, aspects of this case give me pause.  As the Nissan provided the crucial link to the home at 7339 Wabash, it is curious that officers did not seek a warrant for the car.  Searches conducted pursuant to a warrant are always preferred. See Georgia v. Randolph, 547 U.S. 103, 117 (2006) ("'[T]he informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers[.]'") (quoting United States v. Lefkowitz, 285 U.S. 452, 464 (1932)).  In contrast to many other instances where the automobile exception provided the grounds to search a car, in this case probable cause did not develop immediately prior to the search.   Officers obtained no new information during the search of the residence to augment their existing suspicions about the car.  Cf.  United States v. Rowland, 341 F.3d 774, 785 (8th Cir. 2003) (stating that evidence uncovered during a Terry search provided probable cause to search the entire car under the automobile exception).  Nor was there any contraband in plain view.  Cf.  United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir. 2000) (per curiam) (upholding a search of a car parked in the driveway of a home subject to search pursuant to a warrant when officers observed items commonly used for the manufacture of methamphetamine in plain view).  The lack of plain view evidence

-9-

or additional incriminating information undermines any argument that it was impractical for the officers to obtain a warrant for the Nissan in advance of the search.

Additionally, the car was parked in Blaylock's driveway. This court has previously upheld a warrantless search of a car parked in the driveway of a residence. Id. However, other courts have expressed reservations about applying the automobile exception doctrine to cars encountered on private property. See United States v. Fields, 456 F.3d 519, 524-25 (5th Cir. 2006) (noting that the automobile exception "may not apply when a vehicle is parked at the residence of the criminal defendant challenging the constitutionality of the search"); United States v. Brookins, 345 F.3d 231, 237 n.8 (4th Cir. 2003) (suggesting that "heightened privacy interests may be triggered when a vehicle is encountered on private property"); but see United States v. Hines, 449 F.3d 808, 810, 815 (7th Cir. 2006) (applying the automobile exception to a car parked on a private driveway); United States v. Markham, 844 F.2d 366, 369 (6th Cir. 1988) (same).

The officers encountered the Nissan exactly where they expected to find it—parked in front of Blaylock's residence—and learned nothing about the car that was not known prior to applying for a warrant for the house, but not the car. Yet the car search is justified by an exception to the warrant requirement originally grounded upon practical difficulties occurring when officers encounter a moving vehicle on a public road and develop probable cause during the encounter. Allowing for a warrantless search in this context seems antithetical to the automobile exception as originally conceived; as the Carroll Court stated, "[i]n cases where the securing of a warrant is reasonably practicable, it must be used." Carroll, 267 U.S. at 156.[4]

---

[4]I acknowledge that the Court has steered away from the Carroll Court's suggestion that a warrant should be used when possible. See, e.g., Maryland v. Dyson, 527 U.S. 465, 466-67 (1999) (per curiam) (rejecting a contention that a search pursuant to the automobile exception was invalid because the officers had time to obtain a warrant prior to searching the car, but declined to do so).

Regardless, the Court has more recently stated, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." Labron, 518 U.S. at 940. I interpret "without more" to foreclose the imposition of a requirement to obtain a warrant when probable cause is established well before a search of a car is conducted or the consideration of the location of the vehicle on private property. While I am troubled by the cavalier attitude towards obtaining a warrant this case represents, I concur in the court's opinion upholding the search under the expansive reading of the automobile exception articulated by the Supreme Court.

_____