# United States  Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3934

_____

United States of America,           *
                                    *
        Plaintiff- Appellee,        *
                                    *       Appeal from the United States
v.                                  *       District Court for the
                                    *       Eastern District of Missouri.
Rachel Amratiel, f/k/a Thomas Hibdon,  *
                                    *
        Defendant- Appellant.       *

_____

Submitted: September 24, 2010
Filed: October 14, 2010

_____

Before LOKEN, HANSEN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Thomas Hibdon–now known as Rachel Amratiel– entered a conditional guilty plea to possession of an unregistered destructive device in violation of 18 U.S.C. § 5841.  The district court[1] sentenced him to 18 months' imprisonment.  Hibdon appeals the denial of his motion to suppress evidence seized during the warrantless search of a gun safe.  Having jurisdiction under 28 U.S.C. §1291, this court affirms.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri, adopting the Report and Recommendation of the Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri.

On May 24, 2007, police responded to a 911 call about a domestic disturbance at the Hibdon residence. Officers found Ms. Hibdon and the couple's two children at a neighbor's house. After Ms. Hibdon said that she and her husband had a fight–which escalated when he began chasing her around the house with a sword–the officers tried to contact Hibdon who was still inside the house. They called his cell phone, home phone, and knocked repeatedly on the door. Eventually, Hibdon emerged pointing a rifle at one of the deputies. After some time, the officers disarmed him, placed him in a patrol car, and went to speak with Ms. Hibdon. Concerned about the weapons in the house, she gave the police permission to search the residence, signing a "Permission to Search" form. In the garage, officers found a large, locked gun safe. Ms. Hibdon told the officers her husband had the keys. They retrieved the keys from Hibdon who was still in a patrol car not far away. Inside the safe, the officers found 17 firearms, one of which belonged to Ms. Hibdon, and a hand grenade.

The district court denied Hibdon's motion to suppress the grenade, rejecting his argument that Ms. Hibdon's consent to the search was not valid. This court reviews factual determinations for clear error and legal conclusions de novo. *United States v. Lopez-Mendoza*, 601 F.3d 861, 864 (8th Cir. 2010).

The Fourth Amendment does not prohibit the warrantless search of premises when police obtain valid consent. *United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010). Consent need not be given by the defendant, but rather may be given by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). A warrantless search is justified when an officer reasonably relies on a third party's demonstration of apparent authority, even if that party lacks common authority. *See United States v. Hudspeth*, 518 F.3d 954, 958 (8th Cir. 2008) (en banc), *quoting Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990) ("'[O]f the many factual determinations that must regularly be made by agents of the government,' the Fourth Amendment does not require the agents always be correct,

'but that they always be reasonable.'"). Apparent authority exists when "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Rodriguez*, 497 U.S. at 188. *See also* *United States v. Almeida-Perez*, 549 F.3d 1162, 1170-71 (8th Cir. 2008) (explaining that even where police are mistaken as to a third party's actual authority, the search is legal if the circumstances lead the police reasonably to believe that a third party with common authority has consented). Whether the police were reasonable to believe Ms. Hibdon had common authority over the gun safe is a legal determination reviewed de novo. *United States v. James*, 353 F.3d 606, 615 (8th Cir. 2003).

Common authority over premises exists where there is mutual use, and joint access or control. *See Matlock*, 415 U.S. at 171 n.7 (noting that common authority "rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit inspection in his own right."). Here Ms. Hibdon, as a spouse and co-tenant, possessed common authority over the premises. *See United States v. Nichols*, 574 F.3d 633, 636 (8th Cir. 2009) (holding that a defendant's girlfriend who had unrestricted access to the house for three months had common authority ); *United States v. Jones*, 193 F.3d 948, 950 (8th Cir. 1999) ("[A]n adult co-occupant of a residence may consent to a search"); *United States v. Duran*, 957 F.2d 499, 505 (7th Cir. 1992) (holding that "one spouse presumptively has authority to consent to a search of all areas of the homestead.").

Hibdon contends that the officers' reliance on Ms. Hibdon's apparent authority over the gun safe was unreasonable. Here, the available facts would "warrant a person of reasonable caution in the belief that the consenting party had authority over the [gun safe]." *James*, 353 F.3d at 615. At the time of consent, the officers knew: (1) the safe was in a common area, the garage; (2) Ms. Hibdon knew where the keys were (on Hibdon's person) and how to unlock the safe (she unlocked it herself); (3) she

never indicated that she had no access to the safe or that it was for Hibdon's exclusive use; (4) as the officers removed the weapons, Ms. Hibdon identified one of the handguns as hers. Contrary to Hibdon's contention, possession of a key is not the sole factor whether a third party has authority over a locked space. This court does "not accept [defendant's] argument that a key is necessary to establish authority over the premises." *Iron Wing v. United States*, 34 F.3d 662, 665 (8th Cir. 1994). *Compare United States v. Backus*, 349 F.3d 1298, 1304-05 (11th Cir. 2003) (estranged wife, a domestic abuse victim, who co-owned a home with her husband could consent to a search after her husband changed the locks), *and United States v. Brannan*, 898 F.2d 107, 108 (9th Cir. 1990) (wife who had moved out of a house she co-owned with her husband could consent to a search after her husband changed the locks), *with United States v. Block*, 590 F.2d 535, 541 (4th Cir. 1978) (police acted unreasonably in forcing open a locked footlocker where the mother gave consent to search her son's room, but specifically disclaimed any right of access to the footlocker), *and United States v. Infante-Ruiz*, 13 F.3d 498, 505 (1st Cir. 1994) (police acted unreasonably in opening a locked briefcase when the party who consented to the search said specifically that he did not have access to it). While it may be possible for a spouse to maintain exclusive control over some private areas of the home, this is not such a case. *See Almeida-Perez*, 549 F.3d at 1172 (explaining that to rebut the presumption of a spouse's authority to consent to a search, "the nonconsenting spouse must show that police had reason to know the area or container was off-limits to the consenting spouse.").

Hibdon's failure to object when the police took the keys from him is further evidence that the officers acted reasonably. Although Hibdon testified that he objected to the search, this court defers to the district court's determination that because Hibdon's testimony was inconsistent, bizarre and self-serving, he was not credible. *See United States v. Tucker*, 243 F.3d 499, 506 (8th Cir. 2001).

Finally, Hibdon's objection that the police should have asked his permission before searching the gun safe is without merit. When officers obtain valid third-party consent, they are not also required to seek consent from a defendant, even if detained nearby. *See* **Matlock**, 415 U.S. at 171. "[A] potential objector, nearby but not invited to take part in the threshold colloquy, loses out." **Georgia v. Randolph**, 547 U.S. 103, 121 (2006).

The judgment of the district court is affirmed.

―――――――――――――――