# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1982

_____

United States of America

*Plaintiff - Appellee*

v.

Donavan Cross

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: December 14, 2017
Filed: April 30, 2018

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Donavan Cross of being a prohibited person in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), (3), 924(a)(2). The district court[1] sentenced Cross to 120 months in prison. Cross appeals his conviction and sentence, raising several issues. We affirm.

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

# I. The Suppression Issue

On June 4, 2016, Andrea Cross called 911 to report a "physical" disturbance between her grandson, Donavan Cross, and his girlfriend at Andrea's home in Sioux City, Iowa. Andrea told the dispatcher she had left the home and responding officers should "use the front door" to enter. Officers Paul Yaneff and William Enockson soon arrived. As they approached the front door, they heard a woman scream inside. Moments later, Cross's girlfriend, Sophia Finauga, exited the house, distraught and exhibiting a bruised eye. Yaneff called her but Finauga ran back into the house.

Cross, known to be violent and to carry weapons, was wanted on a warrant. Officer Yaneff requested backup. Other officers arrived and surrounded the house. Using a loudspeaker, Yaneff repeatedly ordered Cross to exit the home with his hands empty. Finauga came out first. Yaneff directed her to safety after confirming Cross was still inside. Cross finally emerged, naked except for a hand towel, and was arrested on the outstanding warrant. Cross said he wanted to get clothes from the home and led Yaneff and two other officers inside to his clothes lying in a hallway. On the left side of the hallway was a bedroom; Yaneff testified Cross tried to close the bedroom door with his foot while they were picking up his clothes. As they were leaving, the officers asked Cross if they should lock or shut the front door. Cross replied, "[l]eave it alone just in case [Finauga] goes back inside."

After questioning Cross about Finauga's eye injury and whether she lived with him, Officer Yaneff spoke with Finauga. She said her eye injury resulted when Cross assaulted her four days earlier. Meanwhile, Sergeant Jacob Hoogendyk called the number Andrea Cross had provided. She said that Finauga "had recently moved back into the residence with Donavan," the two had many verbal fights, and "[Finauga] can go get her stuff, and then I want her gone." The Officers helped Finauga arrange for her mother to pick her up. Yaneff asked Finauga if she wanted to collect her

belongings from Andrea Cross's home to take to Finauga's mother's home. Finauga said yes and agreed that two officers should accompany her inside the home.

Inside the home, Finauga walked into the bedroom, collected a makeup bag, and began filling two duffel bags with her belongings. When she picked up a t-shirt lying atop a hamper, a nine-millimeter Ruger gun fell on the floor, ejecting the gun's loaded magazine. Finauga claimed she knew nothing about the gun. Officer Yaneff, standing in the doorway, told Finauga to back away from the gun, collect her belongings, and leave the room. Yaneff proceeded to apply for a search warrant.

Meanwhile, Andrea Cross returned to the rear of her home. Hoogendyk explained they found a gun, were obtaining a search warrant, and asked who used which rooms. Andrea Cross said the bedroom was Donavan's, a room across the hall was his music studio, and he used the bathroom between those rooms. During the ensuing warrant search, officers found a methamphetamine pipe containing burnt residue, clear plastic baggies, mens clothing, and mail and documents addressed to Donavan Cross in the bedroom where the gun and magazine were found. In the studio room, they found live ammunition for the gun, drug paraphernalia, and a plastic bag containing a substance that field-tested positive for methamphetamine. In the bathroom, they found more drug paraphernalia, a holster that fit the gun, and Donavan Cross's cellphone and debit card.

Before trial, Cross moved to suppress the evidence seized from his home, arguing Finauga lacked apparent authority to consent to the officers' entering without a warrant while she collected her belongings. After an evidentiary hearing, the magistrate judge[2] recommended denying the motion, concluding Finauga had actual and apparent authority to consent to the entry. Adopting all but one of the magistrate

---

[2]The Honorable C.J. Williams, United States Magistrate Judge for the Northern District of Iowa.

judge's findings, the district court denied the motion to suppress, concluding the entry into Andrea Cross's house before the warrant issued was constitutionally permissible because it was within the scope of Andrea Cross's initial consent to enter her home to resolve a domestic disturbance, and because the officers reasonably believed that Finauga had apparent authority to consent to the officers' entry. In reviewing the denial of a motion to suppress, we review the court's fact findings for clear error and its legal conclusions *de novo*. United States v. Amratiel, 622 F.3d 914, 915 (8th Cir. 2010), cert. denied, 562 U.S. 1247 (2011).

The general prohibition against warrantless entry into a home does not apply "to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990); see United States v. Matlock, 415 U.S. 164, 171 (1974). "Consent is valid when an officer reasonably relies on a third party's demonstration of apparent authority over the premises." United States v. Lindsey, 702 F.3d 1092, 1096 (8th Cir.) (quotation omitted), cert. denied, 570 U.S. 912 (2013). A third party has apparent authority when "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." Amratiel, 622 F.3d at 916 (quotation omitted). Whether the police reasonably rely "on indicia of common authority . . . is a question of law that we review de novo." United States v. Almeida-Perez, 549 F.3d 1162, 1170 (8th Cir. 2008).

On appeal, Cross argues the police had no reason to believe they had valid consent to enter because they did not adequately investigate Finauga's apparent authority, and because Andrea Cross's initial consent to enter the home lapsed once the domestic disturbance had been resolved. But Cross ignores a litany of facts permitting reasonable officers to believe they had consent to accompany Finauga into the home to collect her personal belongings: After the officers arrived, Finauga exited and reentered the house freely. Cross, under arrest and leaving with his

-4-

clothing, told the officers to leave the front door open in case Finauga went back inside. Finauga told an officer she had been with Donavan Cross for "a while" and confirmed she had personal belongings in the home. Finauga had to call her mother to come get her, suggesting she was not a temporary visitor. And Andrea Cross told Sergeant Hoogendyk that Finauga "had recently moved back into the residence with Donavan," that the two got in numerous verbal fights, and that "[Finauga] can go get her stuff, and then I want her gone."

In these circumstances, we agree with the district court that the officers had a reasonable belief (i) that Finauga had apparent authority to consent to their entry into the house with her, and (ii) that entry to accompany Finauga while she collected her belongings to move elsewhere was directly related to the entry that Andrea Cross authorized in her initial call for assistance. Compare Almeida-Perez, 549 F.3d at 1170-71 (third party had apparent authority to consent; he was sitting on the porch when officers arrived, invited the officers inside, and proceeded without knocking or seeking permission); United States v. Hilliard, 490 F.3d 635, 639-40 (8th Cir. 2007). We affirm the denial of Cross's motion to suppress.

## II. An Evidentiary Issue

At trial, the district court admitted over Cross's objection the jail recording of a telephone conversation Cross had with Finauga after his arrest in which he urged Finauga to consider that Cross would face much harsher consequences if convicted than Finauga, given his criminal background. Cross asked, "so do you got me or what?" Finauga responded, "yeah, I'm gonna go." Cross said he did not do anything wrong; Finauga responded, "I know you didn't." Later, Cross asked, "it was yours?" to which Finauga responded, "yes," in what Cross acknowledges was an "exasperated tone." Cross argued, as he does on appeal, that the call had little probative value because Cross did not admit the firearm or ammunition were his and, in fact, maintained his innocence. In denying his motion for a new trial, the district court

explained the call was probative of Cross's possession because it revealed "Cross's attempt to cajole Finauga into assuming responsibility for the pistol."

On appeal, Cross argues the district court abused its discretion in admitting the call because "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. He contends that any minimal probative value was outweighed by the unfair prejudice of revealing he was calling from jail. See Estelle v. Williams, 425 U.S. 501, 504 (1976). As the district court noted, neither the government's witnesses nor the recording alluded to Cross being incarcerated. Whatever the jury might have inferred from the recording was a far cry from the prejudice that resulted from having to wear prison garb in Williams, which was "likely to be a continuing influence throughout the trial." Id. at 505; see United States v. Johnson, 624 F.3d 815, 821-22 (7th Cir. 2010). That Cross used profanity and sounded "frantic" in the call was not *unfair* prejudice. There was no abuse of the district court's substantial evidentiary discretion. See United States v. Harris-Thompson, 751 F.3d 590, 600 (8th Cir.) (standard of review), cert. denied, 135 S. Ct. 415 (2014).

## III. Sufficiency of the Evidence

Cross appeals the district court's denial of his post-trial motion for judgment of acquittal or a new trial under Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure. We apply the same standard of review to the district court's denial of a Rule 29 motion for judgment of acquittal as we do to a sufficiency of the evidence challenge. United States v. Cook, 603 F.3d 434, 437 (8th Cir. 2010). "We view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id.

Cross argues the evidence was insufficient to convict him of being a prohibited person in possession of a firearm or ammunition because the government introduced insufficient evidence that he knowingly possessed the firearm and ammunition found in two rooms in Andrea Cross's house. Constructive possession may support a conviction under 18 U.S.C. § 922(g) and "is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." United States v. Maxwell, 363 F.3d 815, 818 (8th Cir. 2004), cert. denied, 543 U.S. 1154 (2005). The government may prove constructive possession through circumstantial evidence but "must show a sufficient nexus between the defendant and the firearm." United States v. McDonald, 826 F.3d 1066, 1072 (8th Cir. 2016).

At trial, the government introduced evidence that officers found mens clothing and documents addressed to Donavan Cross in the bedroom where the gun and magazine were found, and that Cross tried to shut the door to that room when officers accompanied him to gather his clothes. Officer Yaneff testified he told Cross that officers found a gun in the bedroom and that Cross, a convicted felon, could not possess a firearm. Cross asserted the gun was his grandmother's and it was not found on his person. When Yaneff explained constructive possession, Cross denied the bedroom was his and claimed only the studio room was his. Andrea Cross testified the bedroom was his and she "wasn't supposed to go in there." Andrea also testified that Cross used the music studio where officers found ammunition that fit the gun. In the bathroom between those rooms, they found Cross's debit card beside a holster that fit the gun. The jail call between Cross and Finauga, in which he tried to convince her to claim ownership of the gun, supported Cross's possession. And both prosecution and defense experts testified that a "mixture" of at least three persons' DNA was found on the gun and magazine, and that Cross was a likely source of the DNA, though possibly by transfer through an intermediary.

Cross argues there was little direct evidence connecting him to the gun -- it did not bear his fingerprints, the DNA evidence was inconclusive, he never admitted possessing the gun and ammunition, and the government presented no eyewitness testimony linking him to the gun. However, circumstantial evidence of possession alone may support a verdict. As the district court explained, "the jury could easily have found that the [bed]room was Cross's bedroom." Andrea Cross corroborated Donavan's statement that he used the music studio, where officers found live ammunition. The DNA evidence, even if not conclusive, supported other evidence of possession. As the district court noted, the government did not have to prove that Cross had *exclusive* possession of the firearm. Drawing all inferences in favor of the guilty verdict, we conclude there was sufficient evidence of actual or constructive possession to support Cross's conviction.

## IV. Sentencing Issues

At sentencing, the district court determined that Cross's total offense level is 22, agreeing with the Presentence Investigation Report (PSR) that his prior felony conviction for possession with intent to deliver marijuana was a controlled substance offense. See U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2(b).[3] Cross is in Criminal History Category V, resulting in an advisory guidelines sentencing range of 77 to 96 months imprisonment. After carefully weighing mitigating sentencing factors urged by Cross, the district court imposed a statutory maximum 120-month sentence, explaining:

> I think Mr. Cross has proven himself to be a habitual domestic abuser on
> five occasions including assaulting his own mother. . . . Of course, he

---

[3]On appeal, Cross argues this was prejudicial error that increased his offense level from 14 to 20. Our recent decision in United States v. Maldonado, 864 F.3d 893 (8th Cir. 2017), cert. denied, 138 S. Ct. 702 (2018), which involved the same statute, Iowa Code Ann. § 124.401(1)(d), forecloses this contention.

was totally disrespectful and a complete jerk to his grandmother in the phone conversation. But assaulting your own mother and inflicting bodily injuries? I don't care what a mother could do. That's reprehensible. And then to do it to the various mothers of his children. . . . I think Mr. Cross is exactly in the crosshairs of who Congress intended to keep off the streets if they possess a firearm. . . . You are violent. And the primary goal of my sentence in this case is to protect the public from further violence by you.

On appeal, Cross launches a volley of challenges at this sentence.

1. First, Cross argues the district court abused its discretion in admitting two jail call recordings and a grand jury transcript at sentencing. "As a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." Nichols v. United States, 511 U.S. 738, 747 (1994); see United States v. Atkins, 250 F.3d 1203, 1212 (8th Cir. 2001). "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

In the first jail call, prior to the hearing on his motion to suppress, Cross angrily instructed his grandmother to testify that she did not consent to let anyone enter her home. Cross peppered his comments with profanity and verbal abuse, prompting the district court to remark, "I cannot believe somebody could be so disrespectful to their grandmother . . . . It means to me he's a disgusting individual." The second was a call to Finauga after trial in which Cross, using offensive language, attributed his conviction to her failure to testify. Finauga replied that Cross was simply avoiding responsibility for his actions and implied that Cross had been waving around the firearm found in the bedroom in Andrea Cross's house.

-9-

Cross argues these calls were not relevant to any contested issue at sentencing and were unfairly prejudicial, prompting the district court to call him a "disgusting individual" and an "idiot." However, the recorded calls related directly to the offense of conviction. Cross's comments to his grandmother and to Finauga were relevant to 18 U.S.C. § 3553(a) sentencing factors, evidencing his lack of respect for the law, refusal to take responsibility for his actions, and "disgusting" conduct. Finauga's vague reference to Cross waving the gun around was also relevant to the district court's finding that he has "a history of displaying weapons."

The grand jury transcript was testimony by Reyna Anderson, the mother of one of Cross's children, recounting an incident in August 2015 when Cross dragged her by her hair out of her bed, hit her violently with a shirt and phone charger, and broke her cellphone. Anderson also testified that Saydie Grier, the mother of one of Cross's other children, told Anderson that Cross "would hit [Grier], [and] pull her around." Cross argues that Anderson's grand jury testimony was unreliable because charges that he assaulted Anderson were dismissed and he was never charged with assaulting Grier. As neither Anderson nor Grier testified at trial or sentencing, Cross complains he was denied an opportunity to cross-examine them, yet the district court relied on these allegations in finding that he is a "habitual" domestic abuser.

We have repeatedly upheld the consideration of grand jury testimony at sentencing; it "has indicia of reliability because it was given under oath and subject to the penalties of perjury." United States v. Morin, 437 F.3d 777, 781 (8th Cir. 2006); see United States v. Wallace, 408 F.3d 1046, 1048 (8th Cir.), cert. denied, 546 U.S. 1069 (2005). That Cross was never convicted of assaulting Anderson or charged with assaulting Grier does not render Anderson's grand jury testimony unreliable. Cross did not object to the PSR's description of his assault against Anderson, and Anderson's testimony recounting assaults against Anderson and Grier was consistent with his behavior toward other women including his mother and Finauga. Although Cross argues he lacked an opportunity to cross-examine Anderson or Grier, "the

-10-

Confrontation Clause does not apply at sentencing hearings." United States v. Sheridan, 859 F.3d 579, 584 (8th Cir. 2017) (quotation omitted). The district court did not abuse its discretion in considering the jail calls and Anderson's grand jury testimony in finding that Cross is a habitual domestic abuser with a history of displaying weapons.

2. Cross further argues the district court clearly erred in finding him "to be a habitual domestic abuser on five occasions," and for multiple instances of brandishing firearms. Regarding instances of domestic abuse, Cross acknowledges he was convicted of assaulting his mother. In denying Cross's motion to suppress, the district court found that he assaulted Finauga on May 31, 2016, when she suffered the eye injury, and again on June 4, when the disturbance caused Andrea Cross to call 911 and Cross broke Finauga's cellphone. Anderson's grand jury testimony supported the district court's finding of at least two additional assaults. Regarding the brandishing of firearms, the district court relied on police reports and other record evidence in overruling Cross's objections to two incidents described in the PSR. In one, Cross was charged with aggravated assault after pointing a gun at a security officer. In the other, he pleaded guilty to violating Nebraska's terroristic threats statute after firing gunshots into the ceiling at a garage party. The district court did not clearly err in finding that Cross was a habitual domestic abuser who had brandished firearms on multiple occasions.

3. Cross argues the 120-month, statutory maximum sentence was substantively unreasonable because the court did not give sufficient weight to his youth, his difficult childhood, and the lack of evidence that he used the firearm he unlawfully possessed. After expressly weighing the above factors, the district court concluded that aggravating factors, including Cross's history of violence and domestic abuse, supported imposing the statutory maximum sentence. "The district court has wide latitude to weigh the § 3553(a) factors and assign some factors greater weight than

others." <u>United States v. Thibeaux</u>, 784 F.3d 1221, 1227 (8th Cir. 2015). The district court did not abuse its substantial sentencing discretion.

The judgment of the district court is affirmed.

_____