# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2644

_____

United States of America

*Plaintiff - Appellee*

v.

Alex Coleman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 25, 2018
Filed: November 27, 2018

_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Alex Coleman of five counts of possession with intent to distribute various controlled substances and one count of conspiracy to possess with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm in furtherance of drug

trafficking in violation of 18 U.S.C. § 924(c)(1)(A). The district court[1] sentenced Coleman to 161 months in prison. Coleman appeals, arguing the district court erred in denying his motion to suppress evidence seized from his residence, and the evidence was insufficient to convict him on any count. We affirm.

## I. Suppression Issues.

On August 8, 2014, Ashlee Phillips, who resided with Coleman, called 911 to claim that Coleman had punched her in the mouth and had a gun. North Little Rock Police Officer Jon Crowder responded, finding Phillips outside the residence with facial injuries. Crowder entered the residence, where he confronted and arrested Coleman after a struggle. Additional officers responded and discovered firearms and drugs during a protective sweep of the residence and a warrant search the following day. Coleman's motion to suppress argued that all evidence seized from his residence following Officer Crowder's initial entry, including evidence seized in the warrant search, should be suppressed for violations of his Fourth Amendment rights.

At a two-day evidentiary hearing, Officer Crowder testified that Phillips exited the residence as he arrived, upset and crying and with visible injuries to her face. Phillips repeated her claim that Coleman struck her and was armed, then opened the residence door and entered the residence with Crowder. Three other responding officers also testified, including Detective James Neely, who completed the search warrant affidavit. The district court denied the motion to suppress. Coleman moved to reconsider, and the district court held a second hearing at which Phillips testified. She denied telling Officer Crowder that Coleman struck her and was armed, and denied opening the residence door and escorting Crowder inside. The district court found Crowder's testimony more credible than Phillips's and again denied the motion

---

[1]The Honorable Brian S. Miller, Chief Judge of the United States District Court for the Eastern District of Arkansas.

to suppress. We review the court's fact findings for clear error and its legal conclusions *de novo*. United States v. Amratiel, 622 F.3d 914, 915 (8th Cir. 2010), cert. denied, 562 U.S. 1247 (2011).

Coleman first argues that Phillips did not invite Officer Crowder inside the residence and his warrantless entry was therefore unlawful. "The general prohibition against warrantless entry into a home does not apply 'to situations in which voluntary consent has been obtained . . . from a third party who possesses common authority over the premises.'" United States v. Cross, 888 F.3d 985, 989 (8th Cir.) (quoting Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)), cert. denied, _ U.S. _, 2018 WL 4283416 (2018). Here, Phillips's testimony established that she possessed common authority. The testimony of Crowder and Phillips conflicted on the issue whether she consented to his entry. The district court explicitly credited Crowder's testimony and found his version of the events more accurate. We have no reason to disturb that finding, which "is virtually unreviewable on appeal." United States v. Walsh, 299 F.3d 729, 735 (8th Cir.), cert. denied, 537 U.S. 1066 (2002).

Inside the residence, Crowder confronted Coleman standing in the kitchen. Coleman said Crowder had no right to be in the home. Crowder explained why he was there and told Coleman to provide an ID, noting large bulges in his pockets. Coleman then ran down the stairs behind him. Crowder ordered him to stop, drew his service weapon, and called for backup. Coleman walked back up, handed Crowder an ID, and sat on the stairs. When Crowder arrested Coleman for domestic battery, a struggle ensued. Crowder shot Coleman with a taser, Coleman fell down the stairs, and Crowder secured him until other officers arrived. Officer Crowder found a large bag of white substance in Coleman's left pocket, a large amount of cash in his right pocket, a trail of small baggies of white powder on the stairwell, and a 9mm Taurus handgun and another bag of cocaine in a loveseat near where Coleman was arrested.

Sergeant Craig Edwards responded because Crowder's use of a taser needed to be reported. Edwards proceeded to the bottom of the stairs where Coleman was lying, secured by Crowder. Edwards observed a large amount of money and narcotics on the floor and the handgun on the loveseat. He instructed Crowder to remove Coleman, learned that the residence had not been secured, and ordered a protective sweep to protect the safety of narcotics officers Edwards was contacting to investigate the seized narcotics. Edwards conducted a cursory sweep of the basement area and found a locked bedroom door which he opened using Coleman's key, provided by Phillips. He observed a bag of marijuana in plain view on the bed, which he left undisturbed. Detective James Neely arrived after Coleman was removed, determined there were no exigent circumstances justifying an additional warrantless search, and used information provided by Crowder to prepare a search warrant application. A magistrate judge signed the warrant at 11:19 p.m.

The officers executed a warrant search the next day. In different parts of the residence, they found methamphetamine, cocaine, cocaine base, heroin, marijuana, various narcotic pills, numerous cell phones, and Coleman's ID card in a box of baggies next to digital scales with residue. They also found a Remington rifle and paperwork in Coleman's name in the locked bedroom. A Honda Accord was parked in the residence's driveway. Unsure whether the warrant included Coleman's car, the officers had a police canine sniff the car's exterior. When the dog alerted, they searched the car, finding additional cocaine and another firearm under the back seat.

Coleman levels numerous Fourth Amendment attacks on the officers' actions. First, he argues that Georgia v. Randolph, 547 U.S. 103 (2006), established that Coleman's demand that Crowder leave the residence prevailed over co-occupant Phillips's consent to enter. We disagree. In Randolph, an objecting co-tenant at the door refused to consent to entry by police who were told by his co-tenant there was evidence of drug use in the house. The Court made clear that a co-tenant's consent to entry will suffice if a potential objector is nearby but not part of the threshold

-4-

colloquy. Id. at 121; see United States v. Hudspeth, 518 F.3d 954, 960 (8th Cir. 2009) (en banc) ("Hudspeth was not at the door and objecting and does not fall within Randolph's 'fine line.'"). In addition, the Court in Randolph made clear that "this case has no bearing on the capacity of the police to protect domestic victims." Id. at 118 and 127 (Breyer, J., concurring). Here, Coleman did not object until after Crowder entered the residence with Phillips's consent to investigate her report of domestic violence. Coleman's objection did not invalidate the lawful entry.

Coleman next argues the protective sweep was an invalid search of the locked bedroom because Coleman had been removed, so a reasonably prudent officer would not infer "that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." United States v. Davis, 471 F.3d 938, 944 (8th Cir. 2006) (quotation omitted). Like the district court, we disagree. Coleman was in the basement prior to his arrest, the locked room was connected to the room in which he was arrested, others were occupying the residence, one firearm had been found, and narcotics officers needed to investigate the large amount of drugs on the basement floor and in the nearby loveseat. These circumstances gave Sgt. Edwards "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 337 (1990). Phillips's consent to search the locked room was not constitutionally required. Moreover, even if the sweep was an improper search, the evidence seized in the bedroom during the warrant search would inevitably have been discovered. See United States v. Pruneda, 518 F.3d 597, 604 (8th Cir. 2008).

Coleman next argues that the warrant did not describe with sufficient particularity the things to be seized and the places to be searched because it broadly authorized search and seizure of "books, records, receipts, ledgers, and other papers related to the transportation, purchase, distribution, or secreting of controlled substances" at premises where other persons were present, without identifying Coleman by name. "[W]here [an overbroad] warrant is invalid only in part, the

warrant is 'severable,' and items seized pursuant to valid portions of the warrant need not be suppressed." United States v. Timley, 443 F.3d 615, 622 (8th Cir.), cert. denied, 549 U.S. 889 (2006). Here, Coleman complains that officers seized cell phones that were not specifically mentioned in the warrant. We agree with the district court that cell phones were within the class of "instrumentalities of criminal activity" the warrant specifically described. "[A] search warrant need not name any particular defendant against whom evidence will be used." United States v. Blaylock, 535 F.3d 922, 927 (8th Cir. 2008), cert denied, 558 U.S. 830 (2009).

Finally, Coleman argues the police illegally searched his vehicle because search of the vehicle was beyond the scope of the warrant, the automobile exception does not permit warrantless search of a vehicle parked at a private residence, and the dog sniff of a vehicle parked in the residence's curtilage was illegal under Florida v. Jardines, 133 S. Ct. 1409 (2013). The district court rejected this argument, noting our decisions holding that the automobile exception applies to a search with probable cause of a vehicle parked in the driveway of a residence. See Blaylock, 535 F.3d at 926-27; United States v. Friend, 50 F.3d 548, 551-52 (8th Cir. 1995), vacated on other grounds, 517 U.S. 1152 (1996).

The Supreme Court recently refused to extend the automobile exception to the warrantless search of a vehicle parked in a portion of a driveway that is part of the residence's curtilage. Collins v. Virginia, 138 S. Ct. 1663, 1669-1671 (2018). But this case has an additional fact of controlling significance. Officers who were lawfully inside Coleman's residence executing a valid warrant to search "the premises and curtilage area" had a drug dog sniff the exterior of a car parked in the driveway. The warrant distinguishes this case from Jardines, where the drug dog sniffed the curtilage of a home before a warrant was obtained, 133 S. Ct. at 1413, and from Collins, where an officer with probable cause obtained off premises searched a motor cycle parked in the curtilage without a warrant. In both cases, the strong Fourth Amendment interest in the curtilage of a home was determinative. Jardines, 133 S.

-6-

Ct. at 1415; Collins, 138 S. Ct at 1671, 1674. That interest was not compromised here. We conclude that the warrant to search "the premises and curtilage area" permitted the officers either to search a vehicle parked in the curtilage, or, more prudently, to have a drug dog sniff the vehicle's exterior to confirm there was probable cause to search the vehicle for contraband named in the warrant.

For these reasons, we conclude the district court did not err in denying Coleman's motion to suppress.

## II. Sufficiency of the Evidence.

At trial, the government offered the items seized when Coleman was arrested and in the subsequent warrant search of his residence -- methamphetamine, cocaine, cocaine base, heroin, marijuana, various narcotic pills, Coleman's ID card in a box of baggies next to digital scales with residue, and three firearms -- supported by the testimony of police officers involved in the arrest, the subsequent searches, and analysis of the seized narcotics. The government also introduced numerous text messages to or from "Alex" recovered from the cell phones seized at the residence, which DEA Special Agent  Brad Abbot identified as messages concerning the purchase and sale of various narcotics. A former cell-mate testified to incriminating statements made by Coleman while they were incarcerated together.

Coleman argues that this evidence was insufficient to establish any of the eight counts of conviction. We review the sufficiency of the evidence to sustain a conviction *de novo*. We will affirm unless, viewing the evidence in the light most favorable to the government and accepting all reasonable inferences that may be drawn in favor of the verdict, "no reasonable jury could have found [Coleman] guilty." United States v. Thompson, 686 F.3d 575, 582 (8th Cir.), cert. denied, 568 U.S. 1054 (2012). Viewing the verdict under this deferential standard, we conclude the evidence was sufficient to convict Coleman of each count.

A reasonable jury could conclude Coleman knowingly possessed the narcotics and firearms found in the residence. Constructive possession "is established if the person has dominion over the premises where the firearm [or drugs are] located, or control, ownership, or dominion over the firearm [or drugs themselves]." Cross, 888 F.3d at 990 (quotations omitted). Coleman lived in the downstairs area of the residence. Officers accessed the locked basement bedroom and the car in the driveway using Coleman's keys, finding firearms, paperwork bearing Coleman's name, and cell phones containing text messages consistent with drug trafficking. There was substantial circumstantial evidence establishing intent to distribute -- the seizure of large amounts of narcotics far greater than typical user quantities, together with drug packaging, cash, digital scales, and the text messages. See United States v. Barrow, 287 F.3d 733, 736-737 (8th Cir.), cert. denied, 537 U.S. 1024 (2002).

In addition to firearm possession, the evidence was sufficient to convict Coleman of possession in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A). The firearms were easily accessible and found in close proximity to drugs found on Coleman's person, in the loveseat, and in his vehicle. Agent Abbott testified that drug traffickers often use guns to protect their narcotics and sale proceeds. This evidence was sufficient to prove "a nexus between the defendant's possession of the firearm and the drug crime." United States v. Goodrich, 739 F.3d 1091, 1098 (8th Cir.), cert. denied, 135 S. Ct. 150 (2014).

The final count was conspiracy to possess with intent to distribute and to distribute a controlled substance. "To convict a defendant of conspiring to distribute a controlled substance, there must be sufficient evidence that: (1) a conspiracy existed for an illegal purpose; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly joined in it. The conspiracy's existence may be proved by direct or circumstantial evidence." United States v. Sanchez-Garcia, 461 F.3d 939, 945 (8th Cir. 2006) (citation omitted). The numerous text messages evidencing drug trafficking found in cell phones seized at Coleman's residence, together with the

seizure of quantities of a diverse array of illegal drugs, some packaged for distribution, along with substantial cash and multiple firearms, was more than sufficient evidence for a reasonable jury to find Coleman guilty of conspiracy to possess with intent to distribute multiple controlled substances.

The judgment of the district court is affirmed.

————————————————