# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1536
_____

United States of America

*Plaintiff - Appellee*

v.

James Flaherty Hill

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 15, 2021
Filed: August 10, 2021
[Published]
_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.
_____

PER CURIAM.

An indictment charged James Flaherty Hill with conspiracy to distribute and possession with intent to distribute 500 grams or more of a methamphetamine mixture

in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846. After the district court[1] denied his motion to suppress evidence seized during a warrant search, a jury convicted Hill of both charges. The district court, varying downward, sentenced him to 204 months' imprisonment. Hill appeals, arguing the court erred in denying his motion to suppress and imposed a substantively unreasonable sentence. We affirm.

## I. Suppression Issues.

In November 2016, drug task force agents were investigating drug dealer James Johnson ("Jay"). On November 10, Special Agent Matt Lund applied for a warrant to search a single family residence on Palm Street in Coon Rapids, Minnesota. His supporting affidavit recited that a known cooperating defendant (CD) was recently arrested with a large quantity of suspected methamphetamine. Interviewed by Lund in jail, the CD said Jay had told him to come to the house on Palm Street to pick up a large quantity of meth. The CD entered the house where Jay gave him a half pound of meth. The CD was arrested after leaving. The CD said guns and a man named "Whitey" were in the house. Shown unlabeled photos, the CD identified Jay as Johnson and Whitey as Hill, the owner of the Palm Street residence. Lund applied for a warrant to search the residence, "any appurtenant structures thereto, including garages, sheds and storage areas and the homes [sic] curtilage," and a "[l]arge white pull behind camping trailer in driveway." An Anoka County District Court Judge issued a warrant to search "the described premises and vehicle" for a lengthy list of identified types of property.

Lund testified he planned to execute the warrant on November 15, explaining the delay was due to the need to approach members of the drug trafficking ring with

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of the Honorable Hildy Bowbeer, United States Magistrate Judge for the District of Minnesota.

"extreme caution." Lund learned that a GPS device had been put on the vehicle of Johnson's suspected source of narcotics. A drive-by revealed the vehicle parked at the Palm Street address. On November 14, that vehicle was tracked traveling to a truck stop and returning. Lund believed the vehicle had picked up a load of methamphetamine and decided to stop it when it left Hill's residence. The vehicle was stopped and a canine unit was called when the driver admitted "he had a lot of dope." Hill, driving a white Plymouth Acclaim, stopped and asked to have the vehicle returned to him, then followed the vehicle to the lot where it was impounded. Lund, concerned evidence was being removed from the house, moved execution of the warrant to November 14. Later that day, Hill returned to the house and parked a white pickup truck facing the street. A maroon vehicle registered to Johnson parked at the residence. The driver soon exited the house carrying bags or packages, and the maroon vehicle and Hill's Acclaim left at the same time. Police followed. When Hill took evasive maneuvers, the maroon vehicle was stopped, and methamphetamine, cocaine, marijuana, and firearms were seized. Police then executed the warrant, searching the house, the large RV named in the warrant, and the white pickup parked in the driveway facing the street. They found indicia of drug trafficking and several guns in the house and a cell phone and two digital scales with drug residue in the white pickup.

On appeal, Hill first argues the warrantless search of his white pickup was invalid because the truck was not named in the search warrant, and police lacked independent probable cause that there was contraband in the truck so the "automobile exception" to the Fourth Amendment's warrant requirement did not apply.

First, we agree with the district court that Hill failed to preserve this issue when he did not identify the seized items he wanted suppressed, as District of Minnesota Local Rule 12.1(c)(1)(B) requires. Prior to 2014 amendments to Rule 12 of the Federal Rules of Criminal Procedure, we held that failure to raise an issue in a pretrial motion to suppress was a waiver under Rule 12(e) that precluded appellate review.

See United States v. Green, 691 F.3d 960, 963-64 (8th Cir. 2012). The 2014 amendments dropped the explicit reference to "waiver" and relocated Rule 12(e) in a new paragraph 12(c)(3). The Rule now provides that, when a pretrial motion is untimely, a court "may consider the defense, objection, or request if the party shows good cause." Here, Hill's failure to identify this issue in his motion to suppress was noted in the magistrate judge's Report and Recommendation, yet Hill made no showing of good cause excusing the untimeliness in his objections to the district court or in arguing the issue on appeal. In United States v. Bernhardt, 903 F.3d 818, 824 (8th Cir. 2018), we noted: "Although there is authority suggesting that the absence of good cause forecloses the point altogether, we will assume for the sake of analysis that plain-error review is available." Making the same assumption in this case, Hill's omission was significant, the government argues, because evidence seized in the white pickup was slight and cumulative, and the government might have elected not to offer it had the issue been timely raised. In these circumstances, granting a new trial on plain error review would require a high showing of prejudicial constitutional error.

Second, we conclude that there was no error. In United States v. Coleman, 909 F.3d 925 (8th Cir. 2018), the defendant made the same argument after police executing a warrant to search his premises also searched his vehicle parked in the driveway. Distinguishing Collins v. Virginia, 138 S. Ct. 1663, 1669-71 (2018), we rejected the argument. "We conclude that the warrant to search 'the premises and curtilage area' permitted the officers either to search a vehicle parked in the curtilage, or, more prudently, to have a drug dog sniff the vehicle's exterior to confirm there was probable cause to search the vehicle for contraband named in the warrant." 909 F.3d at 932. Hill argues this was dicta because police called for a drug dog in Coleman. It was not dicta. In addition, Hill's assertion that this was a warrantless search of his truck because the RV was the only vehicle named in the warrant is without merit. "[A] vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant

authorizing a search of that premises." United States v. Pennington, 287 F.3d 739, 745 (8th Cir.) (cleaned up), cert. denied, 537 U.S. 1022 (2002). Thus, we need not consider whether the district court erred in concluding the automobile exception applied because the officers had probable cause to search the vehicle.

Hill further argues the information provided by the CD was not sufficiently reliable to provide probable cause to issue the warrant. Like the district court, we disagree. The CD was known; he provided first-hand information against his criminal interest in a face-to-face interview with Agent Lund, including identifying Johnson and Hill from unlabeled photos; and much of the information was corroborated by the extensive on-going investigations. The information was sufficiently reliable to support the presumptively valid warrant. See, e.g., United States v. Williams, 10 F.3d 590, 593-94 (8th Cir. 1993).

## II. The Sentencing Issue.

Prior to sentencing, both parties submitted detailed sentencing memoranda discussing their respective objections to the Presentence Investigation Report's determination of the advisory guidelines sentencing range, 360 months to life imprisonment. At the hearing, the court adopted the PSR range. The government urged a sentence at the bottom of the range, 360 months. Hill urged a mandatory minimum sentence of 120 months, noting that three cooperating conspirators had received sentences substantially less than 360 months. The court, applying the sentencing factors in 18 U.S.C. § 3553(a), imposed concurrent 204-month sentences of each count, noting that "I've looked at each of the codefendants."

On appeal, Hill argues the district court abused its discretion and imposed a substantively unreasonable sentence because 204 months imprisonment is greater than necessary to accomplish the § 3553(a) goals and creates an unwarranted sentencing disparity with (i) four similarly situated co-defendants, who received

significantly lower sentences, including two who were also subject to the 120-month mandatory minimum; and (ii) the nationwide average sentence imposed on those convicted of methamphetamine offenses in fiscal year 2019, 95 months. Hill argues that our refusal "to consider the particular sentencing proclivities of specific judges" is contrary to the mandate of 18 U.S.C. § 3553(a)(6).[2]

We have consistently rejected these arguments. As the sentencing records of Hill's co-defendants are not before us, we are not in a position to evaluate his claim of unwarranted disparities. See United States v. Maxwell, 778 F.3d 719, 736 (8th Cir.), cert. denied, 135 S. Ct. 2827 (2015). In these circumstances, "[w]hen a single defendant asserts on appeal that a similarly situated co-conspirator was sentenced differently, and both sentences are within the range of reasonableness, there is no principled basis for an appellate court to say which defendant received the 'appropriate' sentence." United States v. Fry, 792 F.3d 884, 893 (8th Cir. 2015). Here, as in Fry, the comparators proffered by Hill were not similarly situated because they pleaded guilty, accepted responsibility, and cooperated with the government, "earning leniency that justified differential treatment." Id. Likewise, Hill's reliance on national statistics of sentences imposed by different judges provides an appellate court "no principled basis . . . to say which defendants received the appropriate sentence." United States v. McElderry, 875 F.3d 863, 865 (8th Cir. 2017), cert. denied, 138 S. Ct. 2003 (2018).

The district court expressly considered the sentences imposed on other conspirators, noted significant ways in which Hill was not similarly situated for sentencing purposes, and granted a substantial downward variance from the advisory

---

[2]Hill's reply brief also argues that imposing a harsher sentence than the sentences of more culpable co-defendants violated his due process rights. We do not consider arguments made for the first time in a reply brief.

guidelines range.  As in <u>United States v. Baez</u>, 983 F.3d 1029, 1044 (8th Cir. 2020), <u>cert. denied,</u> 2021 WL 2302094 (Jun. 7, 2021), there was no abuse of discretion.

The judgment of the district court is affirmed.

_____